**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CITY OF WARREN POLICE AND FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>      v.<br><br>PRUDENTIAL FINANCIAL, INC., CHARLES F. LOWREY, KENNETH Y. TANJI, and ROBERT M. FALZON,<br><br>      Defendants. | **Civil Action No. 2:19-CV-20839-SRC-CLW** |

---

# DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

---

Tricia B. O'Reilly
David D. Cramer
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

Maeve L. O'Connor (admitted *pro hac vice*)
Susan R. Gittes (admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.      Plaintiff Fails to Plead Particularized Facts Supporting a Strong Inference of Scienter. ... 2

      A.      Plaintiff's "Must Have Known" Arguments Do Not Establish A Strong Inference of Scienter. ....................................................................................................... 4

      B.      The Company's Comments When Announcing the 2Q19 Results Do Not Support an Inference of Scienter. ................................................................................... 8

II.     Plaintiff Fails to Identify Any Actionable Misrepresentation ............................................ 8

      A.      Plaintiff Fails to Identify Any Actionable Misstatement Regarding the Process for Setting Reserves. ........................................................................................... 8

      B.      Plaintiff Identifies No Particular Facts to Show Statements by Defendants Tanji and Falzon Were False or Misleading. .............................................................. 9

      C.      Plaintiff's Remaining Alleged Misstatements Are Inactionable. ......................... 10

III.    Plaintiff Fails to Plead Loss Causation. ......................................................................... 11

IV.     Plaintiff Fails to Allege Facts Sufficient to Plead Control Person Liability. .................... 12

CONCLUSION ................................................................................................................. 12

## TABLE OF AUTHORITIES

CASES

*Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470 (3d Cir. 2013) ..................................................12

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126 (3d Cir. 2004) ..................................4, 6

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 442 Fed. Appx. 672 (3d Cir. 2011) ........................................................................................................................................5

*City of Warren Police v. World Wrestling Ent. Inc.*, No. 20-CV-2031, 2020 WL 4547217 (S.D.N.Y. Aug. 6, 2020) ...................................................................................................11

*De Vito v. Liquid Holdings Grp., Inc.*, No. 15-6969, 2018 WL 6891832 (D.N.J. Dec. 31, 2018) ........................................................................................................................................6

*Hull v. Glob. Digit. Sols., Inc.*, No. 16-5153, 2017 WL 6493148 (D.N.J. Dec. 19, 2017)............11

*In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F.Supp.2d 574 (D.N.J. 2005)......................................5

*In re Elecs. for Imaging, Inc. Sec. Litig.*, No. 17-5992, 2019 WL 397981 (D.N.J. 2019)...........4, 5

*In re Hertz Global Holdings, Inc. Sec. Litig.*, No. 13-7050, 2017 WL 1536223 (D.N.J. Apr. 27, 2017)........................................................................................................................10

*In re Merck & Co., Inc. Sec., Deriv. & Erisa Litig.*, No. 05-1151, 2012 WL 3779309 (D.N.J. Aug. 29, 2012)......................................................................................................5

*In re Milestone Sci. Sec. Litig.*, 103 F. Supp. 2d 425 (D.N.J. 2000)................................................2

*In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367 (D.N.J. 2010) ...........................................7, 10

*In re Westinghouse Sec. Litig.*, 90 F.3d 696 (3d Cir. 1996)............................................................11

*OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481 (3d Cir. 2016).......................................9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015) ...................................................................................................................................8, 9

*Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2016) ..............................................................................11

*Rahman v. Kid Brands, Inc.*, 736 F.3d 237 (3d Cir. 2013)...................................................2, 4, 5, 6

*Roofer's Pension Fund v. Papa*, No. 16-2805, 2019 WL 3601229 (D.N.J. July 27, 2018)............9

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.,* 75 F.3d 801 (2d Cir. 1996).................................................................................................7

**STATUTES**

15 U.S.C. §§ 78u-4, 78u-5(c)(1) ("PSLRA") ..............................................................6, 11

Defendants Prudential Financial, Inc. ("Prudential"), Charles F. Lowrey, Kenneth Y. Tanji, and Robert M. Falzon ("Individual Defendants" and with Prudential, "Defendants") respectfully submit this Reply in support of their motion to dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiff's Opposition demonstrates the Complaint's utter failure to plead particularized facts sufficient to support a strong inference of scienter, actionable misstatements or loss causation. Nor could it, as nothing in the Opposition can cure the Complaint's fundamental flaw: that near-term mortality *experience*—the number of deaths of insureds and amount paid in claims—was purportedly negative in one portion of the Individual Life business does not mean that the Company's actuarial *assumptions* supporting its reserve estimates for future claims must be changed, much less that any Defendant knew how the Company would exercise its actuarial judgment. Instead, Plaintiff's Opposition attempts to lower the heightened pleading bar applied to securities fraud claims, arguing incorrectly that it need not plead particularized facts connecting any Individual Defendant to the facts it claims give rise to scienter. But Third Circuit law is clear that this failure to allege the "who, what, where, when and why" of scienter is fatal to Plaintiff's claims. Plaintiff's fallback position that Defendants "must have known" that the Company would need to materially increase reserves because of supposedly "severe" mortality experience in the Hartford block of policies fares no better. Plaintiff lacks a single fact supporting the amount, timing, or degree of the purportedly "severe" mortality experience, much less tying such knowledge to someone whose scienter can be attributed to the Company as required by Third Circuit law. Instead, Plaintiff relies on the flimsy accounts of three low-level confidential witnesses whose contributions must be steeply discounted because they have no

direct or contemporaneous knowledge of the Company's actuarial process. For all of these reasons, Defendants' motion to dismiss should be granted with prejudice.

## ARGUMENT

### I.   Plaintiff Fails to Plead Particularized Facts Supporting a Strong Inference of Scienter.

Plaintiff's efforts to plead scienter are doomed to fail because Plaintiff relies almost entirely on allegations regarding allegedly adverse mortality experience in the Hartford block and offers no allegations about the actuarial assumptions that are used to set reserves. Plaintiff admits that Prudential estimates reserves using actuarial *assumptions*—long-term predictions that estimate the amount of reserves needed to pay policy benefits decades in the future. (*See, e.g.*, AC ¶ 6). Plaintiff concedes that mortality *experience*—the number of deaths observed in a given time period—is only one input into those assumptions, which are reviewed annually. (*See, e.g.*, AC ¶¶ 6, 7). The Opposition's halfhearted suggestion that the distinction between mortality experience and actuarial assumptions is a factual dispute is belied by their own allegations, which highlight the difference between the two. (*See, e.g.*, AC ¶ 81 (noting that assumptions used to estimate future policy benefits "includ[e] mortality rates")).

Plaintiff has not pleaded facts supporting any inference, much less a "strong" one, that the Individual Defendants should have known anything in advance about the outcome of the Company's actuarial assumptions review, as required to meet the Third Circuit's "exacting" standard for pleading scienter. *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 242 (3d Cir. 2013). Plaintiff fails to explain how Defendants could have recklessly made false statements based on the outcome of a judgment-based process for setting actuarial assumptions, where Plaintiff acknowledges that mortality experience is just one of several factors considered. (*See, e.g.*, AC ¶¶ 7, 37). *See In re Milestone Sci. Sec. Litig.*, 103 F. Supp. 2d 425, 468 n.30 (D.N.J. 2000)

2

(allegation that one of "*many* factors" used to estimate future returns was "determinative" was insufficient to plead scienter where plaintiff "fail[ed] to mention, much [less] allege with particularity" any facts regarding remaining factors).  Plaintiff's only response—that it need not demonstrate that any Defendant had knowledge of the "precise outcome of the actuarial review" (Opp. 36)—is a strawman: Plaintiff has failed to plead *any* facts about the process at all.

Plaintiff's effort to allege that negative experience in the Hartford block was so "extreme" that the Company should have updated its assumptions in advance of the annual assumption review process (Opp. 36-37) suffers from the same fatal flaw.  The Opposition repeatedly contends that a "sensitivity disclosure" issued by Prudential in December 2018 "indicated" that the charge resulting from the second quarter review process would occur "less than 1%" of the time.  (Opp. 6, 34).  But the sensitivity disclosure says nothing about the assumption review process or the likelihood of such a charge.  It merely illustrates the potential financial impact to 2019 results if "mortality **experience**" in the Individual Life business—i.e., the claims the Company would pay in 2019—were to vary by one standard deviation from the Company's expectations as of December 2018.[1]  The assumption review process, by contrast, relates to the Company's reserves for claims to be paid decades in the future.  The Amended Complaint does not even allege facts indicating how mortality experience in the Individual Life business as a whole turned out in 2019, except that it was more favorable than expected in the first quarter of

---

[1] Nor does the disclosure specify the likelihood of a $208 million charge or disclose a "normal distribution" of mortality experience.  Rather, it specifically warns investors that"[i]mpacts on results may not be linear and may vary from indicated sensitivities at thresholds greater than those indicated."   (AC ¶ 5 n.1; *see also* Gittes Supp. Ex. J, at 14).

3

that year, right before the annual assumptions review process (AC ¶ 13; Gittes Supp. Ex. K, at 89)[2].

### A.      Plaintiff's "Must Have Known" Arguments Do Not Establish A Strong Inference of Scienter.

Unable to plead any facts regarding the actuarial assumption review process, Plaintiff falls back on the refrain that Defendants "must have known" of purportedly "extreme" negative mortality experience and that the need to materially increase reserves was therefore "obvious." But the Third Circuit has repeatedly rejected similar attempts to avoid pleading scienter without the requisite particularity.  *See e.g.*, *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 159-60 (3d Cir. 2004) (declining to find scienter where plaintiffs relied on a "vague, conclusory allegation" that defendants "must have been aware of" alleged internal fraud due to participation in "due diligence"); *see also In re Elecs. for Imaging, Inc. Sec. Litig.*, No. 17-5992, 2019 WL 397981, at *8 (D.N.J. 2019) ("[T]he Third Circuit has repeatedly noted the difficulty of establishing a 'they-must-have-known' type of inference.").

The Opposition repeatedly claims that Defendants must have known that reserves were inadequate because mortality experience was "monitored" and Individual Defendants purportedly had "access" to such information.  But Plaintiff fails to plead particularized facts to support an inference that any Defendant was actually aware of or recklessly disregarded the results of such monitoring, as required to plead the requisite state of mind (*see*, *e.g.*, AC ¶¶ 16(a)-(b), 53(a), 84).  *See Rahman*, 736 F.3d at 245, 247 (declining to infer scienter based only on allegations of "corporate management's general awareness of the day-to-day workings of the

---

[2] The Opposition confusingly disputes the existence of favorable mortality in the first quarter of 2019 ("1Q19") by contending that the Company's claim of positive mortality experience was fraudulent.  (Opp. 20, n.13).  But Plaintiff pleads no facts supporting this contention, as its allegations say nothing about mortality experience in Individual Life overall, which Plaintiff cannot dispute is comprised of more than just the Hartford block.

4

company's business" and "general information" reported by confidential witnesses "regarding meetings [with management]"). Plaintiff pleads only that by virtue of their management positions unspecified "Defendants" had "access to the adverse undisclosed information about the Company's financial condition and performance," allegations plainly insufficient to plead scienter. *See* (AC ¶ 32); *In re Merck & Co., Inc. Sec., Deriv. & Erisa Litig.*, No. 05-1151, 2012 WL 3779309, at *11 (D.N.J. Aug. 29, 2012) (scienter not sufficiently pleaded based on allegations that defendants' senior positions within the company allowed them access to certain information because "mere reliance on a person's title or management role within a company will not suffice"); *In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F.Supp.2d 574, 585 (D.N.J. 2005) (holding allegations insufficient where "premised implicitly on the mere fact that Individual Defendants occupied positions of management …").[3]

Plaintiff's "must have known" argument relies on cases applying the "core operation" doctrine, although Plaintiff does not expressly invoke that doctrine and seems to recognize that it does not and cannot plead facts that would justify its application (Opp. 31-35). The Hartford block on which Plaintiff's allegations center is just a part of the Company's Individual Life division, which comprised less than 4% of the Company's adjusted operating income as of December 2018 (MTD 4 n.2). Moreover, even if the "core operation" doctrine applied here, which it does not, a plaintiff seeking to invoke it must plead that the allegedly concealed information was actually *conveyed* to management. *See Rahman*, 736 F.3d at 247 (explaining that, even if the core operations doctrine applied, scienter could not be established without "allegations of specific information conveyed to management and related to fraud"); *In re Elecs.*

---

[3] While Plaintiff tries to suggest otherwise, the Third Circuit has expressly declined to accept the doctrine of corporate scienter, *see City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 442 Fed. Appx. 672, 676 (3d Cir. 2011), and Plaintiff in any event fails to plead any of the "extraordinary" bases for this Court to apply the doctrine here. *Id.*

*for Imaging, Inc. Sec. Litig.*, 2019 WL 397981, at *9 (declining to find scienter without allegations of "specific information conveyed to management and related to the fraud" even where core operations doctrine applied).[4]  Plaintiff completely fails to do so here.

Even if Plaintiff's "must have known" argument were legally viable, which it is not, it would fail to establish scienter because it relies heavily on (i) the unreliable accounts of three low-level confidential witnesses in peripheral roles to plead that Defendants had knowledge of allegedly adverse mortality experience in the Hartford block during the putative class period and (ii) lawyers' argumentation about the extent of the alleged adverse experience.  The Opposition does not dispute that none of its confidential witnesses (i) had any actuarial expertise or involvement with the setting of actuarial assumptions, (ii) could quantify the allegedly poor mortality experience, or (iii) could specify from firsthand knowledge how and when such experience was observed.  Plaintiff offers no answer to the numerous cases cited in the Motion requiring courts to "steeply" discount allegations of confidential witnesses in these circumstances.   (MTD 14-15). [5]   *Rahman*, 736 F.3d at 245 (discounting allegations of confidential witnesses who "offer[ed] little more than generalized allegations with few specifics and even less concrete support").

The Opposition attempts to prop up these weak allegations by repeatedly asserting that allegedly adverse mortality experience in the Hartford block was "extreme" beginning in the

---

[4] *De Vito*, cited by Plaintiff, confirms this principle. *De Vito v. Liquid Holdings Grp., Inc.*, No. 15-6969, 2018 WL 6891832, at *33 (D.N.J. Dec. 31, 2018) (only applying the core operations doctrine where audit committee had already found defendants actually knew of the undisclosed information and plaintiff quoted emails by the defendants reflecting such knowledge).

[5] Contrary to Plaintiff's contention, the three witnesses do not "corroborate" each other and instead largely cover different topics; in fact, FE1 is the only witness who even contends mortality experience was negative.  (AC ¶ 53(a)-(b)).  In any event, the "sheer volume of confidential sources" does not plead scienter, as the "[c]obbling together [of] a litany of inadequate allegations does not render those allegations particularized in accordance with Rule 9(b) or the PSLRA." *Cal. Pub. Emps.' Ret. Sys.*, 394 F.3d at 155.

third quarter of 2018 ("3Q18")—an argument by counsel that is not supported by well-pleaded facts. (Opp. 5, 16, 21, 25, 27, 31, 36). The Complaint does not contain any allegations purporting to quantify or specify the precise timing of the adverse mortality experience on which Plaintiff relies. Instead, the Opposition points to FE1's claim that a "year end" "results package" after the close of 2019 showed that the Hartford block suffered from an unspecified amount of negative mortality development for the preceding six quarters, beginning in 3Q18. (Opp. 31). But this allegation says nothing about the degree of negative mortality experience in the Hartford block reflected in that "package"—much less what was known about that mortality experience and its potential significance prior to the completion of the assumptions review process in the second quarter of 2019 ("2Q19"). Moreover, this argument overlooks that the Company's mortality experience for Individual Life overall was *favorable* as late as 1Q19, when Plaintiff asserts—unsupported by any well-pleaded facts or even by Plaintiff's own confidential witnesses—that undisclosed mortality experience in the Hartford block was "extremely adverse." (AC ¶¶ 13, 91).

Plaintiffs are left to argue that the Court should infer scienter based on mere "temporal proximity" between the Investor Day remarks and disclosure of the second quarter charge eight weeks later, but case law makes clear that closeness in time is not enough to plead scienter – especially where, as here, it is unsupported by other well-pleaded facts establishing a strong inference of scienter. *See In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 399 n.43 (D.N.J. 2010) ("temporal proximity of events is insufficient circumstantial evidence" of scienter); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.,* 75 F.3d 801, 812 (2d Cir. 1996) (no scienter based on temporal proximity as to statement that retail sales were "strong" made "at least three weeks before" announcement that sales were declining).

7

**B.     The Company's Comments When Announcing the 2Q19 Results Do Not Support an Inference of Scienter.**

Plaintiff's last-ditch effort to base scienter on the Company's statement during the 2Q19 earnings call that it had been using "more current assumptions" to price policies issued in recent years compared with "older vintage" policies is unavailing.  (Opp. 35-36.)  As a threshold matter, Plaintiff pleads no facts supporting its assumption that "older vintage" was a reference to the Hartford block.  Moreover, the Company's use of different assumptions for newer life insurance products issued during "the last few years" (AC ¶ 66) does not mean that the assumptions underlying reserves for the "older vintage" policies were known to be materially wrong in 2019, let alone that any Individual Defendant was aware of this.  That the Company took charges related to mortality in the Individual Life business in prior years (Opp. 37) strongly weighs against any inference that Defendants were trying to deceive investors by hiding mortality experience, and instead supports the inference that Defendants reasonably believed that those earlier assumption changes would ensure the Company's reserves were sufficient.

**II.     Plaintiff Fails to Identify Any Actionable Misrepresentation.**

**A.     Plaintiff Fails to Identify Any Actionable Misstatement Regarding the Process for Setting Reserves.**

Plaintiff does not dispute that *Omnicare* applies to statements of reserves. Instead, in an attempt to avoid the *Omnicare* framework, Plaintiff attempts to cast the Company's statements regarding the process for setting reserves as statements of fact, claiming that by not updating reserves sooner to account for allegedly negative mortality experience, the Company failed to act in accordance with its disclosure which Plaintiff claims stated that "reserves . . . would be updated if a 'material change' in mortality occurred."  (Opp. 24).  But the full language of the disclosure makes clear that Company may adjust its assumptions off-cycle if "a material change is observed in an interim period **that we feel is indicative of a long-term trend**"—a

8

quintessential statement of opinion subject to *Omnicare*.[6]  *See* Gittes Decl. Ex. D at 64 (emphasis added).

### B.    Plaintiff Identifies No Particular Facts to Show Statements by Defendants Tanji and Falzon Were False or Misleading.

Nor was any statement by Tanji or Falzon false or misleading.  As to Tanji, Plaintiff's Opposition identifies no facts to establish that his Investor Day statements that mortality experience in the Individual Life business was "slightly negative" and within the range of "normal volatility" were false or misleading.  Instead, Plaintiff claims based on hindsight that, given the size of the reserve charge ultimately taken, Tanji's statements must have been false at the time they were made.  As discussed above, this is a classic attempt to plead fraud by hindsight, and temporal proximity cannot plead falsity or scienter.  *See supra* Section I.A; *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 497 (3d Cir. 2016) (holding the fact that "adverse" reactions ultimately followed a "major announcement" fell "well short of demonstrating with particularity" that Defendant "was aware of" the negative outcome "at the time" the statement was made).  Plaintiff's suggestion that there is a dispute of fact as to whether Tanji's statement concerned mortality experience for the Hartford block or for Individual Life as a whole merits little response.  Nothing about Tanji's statement is unclear:  Tanji responded to a question about mortality experience in Individual Life that did not mention the Hartford block, and Tanji's answer made no mention of the Hartford block.[7]  Plaintiff cannot manufacture a

---

[6] Plaintiff's arguments concerning statements of opinion about GAAP compliance fail for the same reasons, as Plaintiff offers no response to case law making clear that these are statements of opinion. (MTD 26)  Nor does Plaintiff plead that compliance with the GAAP provisions at issue is an "objective" fact, as would be required to avoid *Omnicare*.  *Roofer's Pension Fund v. Papa*, No. 16-2805, 2019 WL 3601229 (D.N.J. July 27, 2018).

[7] *See* AC ¶ 54 ("[Tanji:] And then the third area of interest is [sic] involves our individual life business in our mortality experience.  And our recent experience has been in between range of what we'd expect normal volatility, but net it has been below our experience." "[Analyst:] . . . I missed what you've said. Has mortality been more favorable is that relative to what your

factual dispute to make up for the weakness of their allegations. Lacking any facts suggesting Tanji's statement was misleading, Plaintiff resorts to selectively and misleadingly quoting analysts reports—for example, suggesting that UBS thought the company should have "reset the bar" on mortality on Investor Day, when in fact UBS was speaking of baseline pre-tax operating income for all "core" segments of the Company. *Compare* (Opp. at 17-18) *with* AC ¶¶ 62; Gittes Supp. Decl. Ex. L, at 1. These selective quotations are yet another impermissible attempt to plead fraud by hindsight.

The statement attributed to Defendant Falzon that there were "no systemic issues" with mortality is likewise inactionable because it appears in an unverified analyst report. *In re Synchronoss*, 705 F. Supp. 2d at 403 (holding that a company is not responsible for the content of analyst reports unless the plaintiff alleges facts indicating that the company retained the analysts or misled the analysts with the goal of having that information passed on to the market).[8] In any event, Plaintiff fails to identify any fact in the Amended Complaint that pleads what a "systemic" issue in underwriting and mortality assumptions would be, or establishes that its allegations about the Hartford block would qualify as "systemic," especially when those allegations concern just one portion of the Company's Individual Life business. (Opp. 19-20.)

**C.      Plaintiff's Remaining Alleged Misstatements Are Inactionable.**

*First*, Plaintiff does not meaningfully dispute that descriptions of a company's financial information as "rock-solid" or "strong" are anything but inactionable puffery. (Opp. 13-14; MTD 27-28; AC ¶¶ 12, 45, 47.) *See In re Hertz Global Holdings, Inc. Sec. Litig.*, No. 13-7050, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017).

---

expectations are or . . . ? [Tanji:] No. It's very quarter-to-quarter, both positive and negative. If you looked at it, it has been slightly negative and we're taking a look at that.").

[8] Contrary to Plaintiff's suggestion, *In re Synchronoss* found inactionable statements attributed to a speaker by an analyst report where the analyst was not alleged to "operate[] as spokesperson(s) for or [] otherwise retained by/acted as agents of [] Defendants." 705 F. Supp. 2d at 377 n.14.

*Second*, Plaintiff's efforts to avoid application of the PSLRA's Safe Harbor provision to the forward-looking statements in the Complaint are unavailing. Plaintiff does not plead that Defendants "misrepresented present facts" or that circumstances had already "come to pass," as would be required to avoid application of the Safe Harbor provision under the authorities Plaintiff cites. *See City of Warren Police v. World Wrestling Ent. Inc.*, No. 20-CV-2031, 2020 WL 4547217, at *8 (S.D.N.Y. Aug. 6, 2020) (refusing to apply the Safe Harbor provision to Defendants' statements because such statements described present facts); *see also In re Westinghouse Sec. Litig.*, 90 F.3d 696, 709 (3d Cir. 1996) (finding "cautionary language" did not protect defendants' statements since they were not forward-looking and instead described "known losses" and "known risks").

*Third*, Plaintiff cannot premise any claim on an alleged violation of Item 303.[9] As explained in the Motion, the Third Circuit has held for twenty years that Item 303 cannot give rise to an independent securities fraud claim under Section 10(b) or Rule 10b-5. (MTD 25). Plaintiff's only support for its argument is an SEC *amicus* brief whose conclusion this Circuit specifically rejected, underscoring the weakness of Plaintiff's claim. *See Oran v. Stafford*, 226 F.3d 275, 287-88 (3d Cir. 2016).

## III.   Plaintiff Fails to Plead Loss Causation.

The Amended Complaint fails to allege particular facts showing that any of the Defendants' statements were false at the time they were made, which Plaintiff concedes is required to plead loss causation. (Opp. 38 (quoting *Hull v. Glob. Digit. Sols., Inc.*, No. 16-5153, 2017 WL 6493148, at *15 (D.N.J. Dec. 19, 2017)). Contrary to Plaintiff's assertion, allegations regarding negative mortality experience in the Hartford block are insufficient to show that a need

---

[9] Contrary to Plaintiff's argument, (Opp. 15-16, 22), Defendants do not concede any violations concerning Item 303 or GAAP. As discussed above, the Amended Complaint does not plead facts sufficient to show that any disclosure was required. (MTD 21, 23, 26 n.6, 26-27.)

for an allegedly material reserve increase was known prior to completion of the assumption review process and therefore do not plead the requisite "false claims." *See supra* Section I.

### IV.    Plaintiff Fails to Allege Facts Sufficient to Plead Control Person Liability.

Because Plaintiff has failed to plead either a primary violation or "culpable participation" in the alleged fraud, Plaintiff has also failed to plead control person liability as to the Individual Defendants under Section 20(a) under Third Circuit precedent.  *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 (3d Cir. 2013) ("[I]n order for secondary liability to attach under § 20(a), the defendant 'must have been a culpable participant in the act or acts constituting the violation or cause of action.'").

### CONCLUSION

For the reasons stated above, Plaintiff's Amended Complaint fails to adequately plead any fraud and should be dismissed with prejudice.


Dated:  November 6, 2020

*s/ Tricia B. O'Reilly*
Tricia B. O'Reilly
David D. Cramer
Walsh Pizzi O'Reilly Falanga LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

Maeve L. O'Connor (admitted *pro hac vice*)
Susan R. Gittes (admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants*
