COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)
psp@njlawfirm.com

SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  212/584-0700
212/584-0799 (fax)
cseeger@seegerweiss.com

Local Counsel for Plaintiff

 [Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re PRUDENTIAL FINANCIAL, INC. SECURITIES LITIGATION | ) ) ) | Civil Action No. 2:19-cv-20839-SRC-CLW |
| This Document Relates To: ALL ACTIONS. | ) ) ) ) ) ) ) ) | CLASS ACTION LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Motion Return Date: March 18, 2024 |

4895-8836-0608.v1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................1

II.    PROCEDURAL HISTORY OF THE LITIGATION ...................................4

III.   THE SETTLEMENT TERMS ..........................................................5

IV.    THE SETTLEMENT RESULTED FROM ARM'S-LENGTH SETTLEMENT NEGOTIATIONS..................................................7

V.     PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD PLAINTIFF TO NOTIFY THE SETTLEMENT CLASS ...........................................................................................7

       A.    The Proposed Settlement Is Fair .............................................11

       B.    The Benefits Under the Settlement Are Adequate.............................14

       C.    The Other Rule 23(e)(2) Factors Are Met............................................17

             1.    The Proposed Method for Distributing Relief Is Effective ......18

             2.    Attorneys' Fees and Expenses ....................................................19

             3.    The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion ........................20

             4.    Settlement Class Members Are Treated Equitably...................21

VI.    CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE ......................................21

             1.    The Settlement Class Satisfies the Requirements of Rule 23(a) ..............................................................................22

             2.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ........................................................................26

             3.    Lead Counsel Should Be Appointed Counsel for the Settlement Class.......................................................................27

4895-8836-0608.v1

**Page**

VII.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND
       DUE PROCESS ...................................................................................28

       A.    Retention of Gilardi & Co. LLC as Claims Administrator .................28

       B.    Proposed Notice Procedures.................................................................29

VIII.  PROPOSED SCHEDULE OF EVENTS .......................................................32

IX.    CONCLUSION.............................................................................................33

4895-8836-0608.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
2013 WL 12153597 (D.N.J. Jan. 30, 2013) ..................................................... 19

*Alves v. Main*,
2012 WL 6043272 (D.N.J. Dec. 4, 2012),
*aff'd*, 559 F. App'x 151 (3d Cir. 2014) .............................................................. 12

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................................... 21, 26

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ......................................................................................... 25

*Baby Neal for & by Kanter v. Casey*,
43 F.3d 48 (3d Cir. 1994) ................................................................................ 23

*Bredbenner v. Liberty Travel, Inc.*,
2011 WL 1344745 (D.N.J. Apr. 8, 2011) ......................................................... 13

*Curiale v. Lenox Grp., Inc.*,
2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ..................................................... 8

*Doherty v. Hertz Corp.*,
2014 WL 2916494 (D.N.J. June 25, 2014) ....................................................... 25

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) .............................................................................. 8

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ...................................................................... *passim*

*Howard v. Arconic Inc.*,
Civ. Action No. 2:17-cv-01057-MRH, ECF 227
(W.D. Pa. May 2, 2023) ................................................................................... 30

*Hoxworth v. Blinder, Robinson & Co.*,
980 F.2d 912 (3d Cir. 1992) ............................................................................ 24

4895-8836-0608.v1

**Page**

*Huffman v. Prudential Ins. Co.*,
  2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ....................................................... 12

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ..................................................................... 30

*In re Am. Bank Note Holographics*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) .............................................................. 16

*In re AT&T Corp. Sec. Litig.*,
  2005 WL 6716404 (D.N.J. Apr. 25, 2005),
  *aff'd*, 455 F.3d 160 (3d Cir. 2006) ................................................................. 11

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ........................................................................... 25

*In re Cigna Corp Sec. Litig.*,
  2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) .................................................... 22

*In re DVI Inc. Sec. Litig.*,
  249 F.R.D. 196 (E.D. Pa. 2008) ................................................................ 21, 23

*In re Genworth Fin. Sec. Litig.*,
  2016 WL 7187290 (E.D. Va. Sept. 26, 2016) ................................................... 19

*In re Heckmann Corp. Sec. Litig.*,
  2013 WL 2456104 (D. Del. June 6, 2013) ....................................................... 26

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012) ..................................................................... 10, 14

*In re Ins. Brokerage Antitrust Litig.*,
  297 F.R.D. 136 (D.N.J. 2013) ......................................................................... 19

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................... 10

*In re Nat'l Football League Players Concussion Inj. Litig.*,
  775 F.3d 570 (3d Cir. 2014) ........................................................................... 21

- iv -

**Page**

*In re Novo Nordisk Sec. Litig.*,
No. 3:17-cv-00209-ZNQ-LHG, ECF 361
(D.N.J. July 13, 2022) .......................................................................................19

*In re PAR Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) ..................................................14, 16

*In re Pfizer Inc. Sec. Litig.*,
No. 04-cv-09866 (LTS), ECF 727
(S.D.N.Y. Dec. 21, 2016) ..................................................................................19

*In re Processed Egg Prods. Antitrust Litig.*,
2014 WL 828083 (E.D. Pa. Feb. 28, 2014) .......................................................10

*In re Schering-Plough/Merck Merger Litig.*,
2010 WL 1257722 (D.N.J. Mar. 26, 2010) ..................................................10, 12

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ....................................................................8, 12, 20

*In re Wilmington Tr. Sec. Litig.*,
2018 WL 6046452 (D. Del. Nov. 19, 2018)......................................................19

*Jones v. Com. Bancorp, Inc.*,
2007 WL 2085357 (D.N.J. July 16, 2007) .....................................................9, 30

*Kress v. Fulton Bank, N.A.*,
2021 WL 9031639 (D.N.J. Sept. 17, 2021).......................................................23

*Lincoln Adventures LLC v. Those Certain Underwriters
at Lloyd's, London Members*,
2019 WL 4877563 (D.N.J. Oct. 3, 2019) ..........................................................11

*Nafar v. Hollywood Tanning Sys., Inc.*,
2008 WL 3821776 (D.N.J. Aug. 12, 2008) .......................................................27

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001) ..............................................................................23

- v -

**Page**

*Osgood v. Harrah's Ent., Inc.*,
   202 F.R.D. 115 (D.N.J. 2001)..............................................................................24

*Roofer's Pension Fund v. Papa*,
   333 F.R.D. 66 (D.N.J. 2019)................................................................................26

*Sanders v. CJS Sols. Grp., LLC*,
   2018 WL 1116017 (S.D.N.Y. Feb. 28, 2018) .....................................................13

*Schuh v. HCA Holdings, Inc.*,
   2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016) ...............................................19

*Smith v. Suprema Specialties, Inc.*,
   2007 WL 1217980 (D.N.J. Apr. 23, 2007)...........................................................25

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) ...............................................................................22

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ...............................................................................23

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005)..............................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)............................................................................................23

*Weisfeld v. Sun Chem. Corp.*,
   210 F.R.D. 136 (D.N.J. 2002),
   *aff'd*, 84 F. App'x 257 (3d Cir. 2004)................................................................25

*Yang v. Odom*,
   392 F.3d 97 (3d Cir. 2004) ..................................................................................21

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
   §78j(b)....................................................................................................................4
   §78t(a)....................................................................................................................4

**Page**

Federal Rules of Civil Procedure
Rule 23 .................................................................................................21, 30, 32
Rule 23(a)..............................................................................................22
Rule 23(a)(1)..........................................................................................22
Rule 23(a)(2)..........................................................................................23
Rule 23(a)(3)..........................................................................................23
Rule 23(a)(4)..........................................................................................24
Rule 23(b)(3).........................................................................22, 25, 26
Rule 23(c)(2)(B)......................................................................................28
Rule 23(e)..........................................................................2, 7, 8, 28
Rule 23(e)(1)(B)...............................................................................8, 28
Rule 23(e)(2)...........................................................................*passim*
Rule 23(e)(2)(A) ...........................................................................10, 11
Rule 23(e)(2)(B).............................................................................10, 13
Rule 23(e)(2)(C)(i).........................................................................13, 14
Rule 23(e)(2)(C)(ii)................................................................................17
Rule 23(e)(2)(C)(iii) ..............................................................................17
Rule 23(e)(2)(C)(iv)........................................................................17, 20
Rule 23(e)(2)(D) ...................................................................................20
Rule 23(e)(3)....................................................................................9, 29
Rule 23(g) ............................................................................................27

## SECONDARY AUTHORITIES

*Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review*
Edward Flores and Svetlana Starykh (NERA Jan. 23, 2024).............................16

*Manual for Complex Litigation* (4th ed. 2004)
§21.63...........................................................................................8, 31

*Federal Practice and Procedure: Civil 2d* (1986)
7A Wright, Miller & Kane,
§1788.................................................................................................25

4895-8836-0608.v1

Lead Plaintiff City of Warren Police and Fire Retirement System,[1] by and through its undersigned counsel of record, respectfully submits this Memorandum of Law in Support of Motion for Preliminary Approval of Class Action Settlement.

## I.    INTRODUCTION

Lead Plaintiff respectfully requests that the Court grant preliminary approval of the parties' $35 million settlement.  The Settlement is the product of more than four years of hard-fought litigation among sophisticated parties and skillful counsel, and follows extensive, arm's-length mediation and settlement discussions overseen by an experienced mediator, the Honorable Freda Wolfson (Ret.).  As set forth in the Stipulation, the Settlement provides for the payment of $35 million in cash to resolve this securities class action against all Defendants.  The Settlement is an excellent result for the Settlement Class, particularly when viewed in light of procedural history of the case and the risks of proceeding through further litigation.

This securities class action arises out of Defendants' allegedly false and misleading statements and/or omissions of material facts regarding the Company's reserves, including the methodology and assumptions used to determine those reserves, the adequacy of those reserves to meet current and future claims costs, the potential for negative mortality development (*i.e.*, higher than expected deaths of

---

[1]    Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation of Settlement (the "Stipulation"), filed herewith.  All citations and internal quotation marks are omitted and emphasis is added, unless otherwise indicated.

- 1 -

insureds), and as a result, the Company's current financial results and future prospects. Lead Plaintiff alleges that these alleged misstatements and omissions caused the Company's common stock to trade at artificially inflated prices during the Class Period. Lead Plaintiff alleges that as the truth about Prudential's misrepresentations was revealed through public disclosure, the price of Prudential's stock fell dramatically, causing significant economic harm to Lead Plaintiff and the Settlement Class. Defendants deny all of Lead Plaintiff's allegations.

Lead Plaintiff was well informed of the strengths and weaknesses of its claims and Defendants' defenses as it negotiated the Settlement. In addition to opposing Defendants' motion to dismiss, analyzing the District Court's December 29, 2020 Opinion and order granting Defendants' motion to dismiss and pursuing an appeal in the Third Circuit Court of Appeals, Lead Plaintiff had developed a robust factual record through its extensive pre-filing investigation and analysis and insights from former Prudential employees.

As detailed herein, the proposed Settlement before the Court is an excellent one under the circumstances, and Lead Plaintiff respectfully requests that the Court preliminarily approve it and approve the form and manner of providing notice of it to the Settlement Class.

At this first stage of settlement approval, courts are to evaluate whether they are likely to be able to approve the terms of a settlement under Rule 23(e), as

- 2 -

amended in 2018, and under the *Girsh* standards.  *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).  As discussed below, the Settlement easily meets these standards because it is a fair, reasonable, and adequate resolution for the Settlement Class, and balances the objective of securing the highest possible recovery against the substantial risks and costs of continued litigation, including the risk that the Settlement Class could receive nothing or an amount equal to or less than the Settlement Amount years into the future.  Accordingly, Lead Plaintiff and Lead Counsel, who have litigated this case from inception, believe that the Settlement is an outstanding result and is in the best interests of the Settlement Class.

Moreover, the Settlement is fair, reasonable and adequate because, under the Stipulation, each Settlement Class Member is treated equitably.  Each Settlement Class Member that properly submits a valid Proof of Claim will receive a *pro rata* share of the monetary relief based on the terms of the Plan of Allocation.

Lead Plaintiff seeks preliminary approval so that notice may be disseminated to the Settlement Class and a Settlement Hearing and other Settlement-related dates may be scheduled.  In connection with the Settlement Hearing, Lead Plaintiff will ask the Court to make final determinations as to: (i) whether the Settlement is fair, reasonable, and adequate as a whole; (ii) whether the Plan of Allocation should be approved; and (iii) an award of attorneys' fees and expenses to Lead Counsel.

4895-8836-0608.v1

## II.    PROCEDURAL HISTORY OF THE LITIGATION

The initial complaint in the Litigation was filed on November 27, 2019. On March 20, 2020, the Court appointed City of Warren Police and Fire Retirement System as Lead Plaintiff and Robbins Geller Rudman & Dowd LLP as Lead Counsel.

On June 3, 2020, Lead Plaintiff filed its Amended Complaint for Violations of the Federal Securities Laws ("Complaint") alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Defendants moved to dismiss the Complaint which was granted with prejudice on December 29, 2020.[2] On January 26, 2021, Lead Plaintiff filed its Notice of Appeal to the Third Circuit Court of Appeals, and on June 13, 2023, and after full briefing and oral argument, the Third Circuit in large part affirmed the District Court's December 29, 2020 Opinion and Order and concluded that all but one alleged misstatement was not actionable; the Third Circuit reversed and remanded this Court's dismissal as to one alleged misstatement from June 2019. The Third Circuit remanded the case to this Court for further proceedings, *i.e.*, to evaluate Defendants' motion to dismiss with respect to scienter and loss causation as to the sole alleged misstatement remaining in the Litigation.

---

[2]    The Complaint alleged claims against Defendants and Charles Lowrey and Robert Falzon (the "Dismissed Defendants").

- 4 -

On August 30, 2023, the Court held a status conference. Thereafter, on November 30, 2023, Lead Plaintiff and Defendants participated in a mediation session with the Hon. Judge Freda Wolfson (Ret.). The mediation session was preceded by submission of mediation statements by the Settling Parties. The Settling Parties engaged in good faith negotiations, and after a full day of mediation, accepted a mediator's proposal to settle the Litigation in exchange for a cash payment of $35 million for the benefit of the Settlement Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court. The Stipulation (together with the Exhibits thereto) reflects the final and binding agreement among the Settling Parties.

## III.    THE SETTLEMENT TERMS

Under the agreed-upon terms of the Settlement, Defendants will pay or cause to be paid $35 million into the Escrow Account, which amount, plus accrued interest, constitutes the Settlement Fund.

First, the costs associated with providing notice to the Settlement Class, and subsequent settlement administration ("Notice and Administration Expenses"), will be funded out of the Settlement Fund. Lead Plaintiff proposes that nationally recognized class action settlement administrator Gilardi & Co. LLC be approved to provide notice and claims administration services in connection with the Settlement.

- 5 -

Second, because the Settlement Fund is a "qualified settlement fund" within the meaning of Treasury Regulation §1.468B-1, the income earned on the Settlement Fund is taxable. All Taxes and Tax Expenses (such as expenses of tax attorneys and/or accountants) shall be paid out of the Settlement Fund.

Third, assuming the Court grants preliminary approval of the Settlement, Lead Plaintiff will subsequently move, at the time the Court sets, for final approval of the Settlement. Concurrent with Lead Plaintiff's final-approval motion, Lead Counsel will submit an application for an award of attorneys' fees not to exceed 25% of the Settlement Amount and payment of expenses and charges resulting from the prosecution of the Litigation not to exceed $200,000, plus interest earned on both amounts. Such awards and expenses shall be paid from the Settlement Fund upon entry of the order awarding such fees and expenses.

Fourth, once Notice and Administration Expenses, Taxes and Tax Expenses, Court-approved attorneys' fees and expenses, and any other fees or expenses approved by the Court have been paid from the Settlement Fund, the remaining amount (the "Net Settlement Fund") shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00. Any amount remaining following that distribution shall be redistributed in an economically feasible manner. The Plan of Allocation

- 6 -

treats all Settlement Class Members equitably based on the timing of their Prudential stock purchases and sales.

In exchange for the benefits provided under the Stipulation, Settlement Class Members will release any and all claims against Defendants based on, or related in any way to: (i) the purchase of Prudential common stock at any time between June 5, 2019 and August 2, 2019, inclusive; and (ii) the facts, matters, statements, or omissions alleged in the Litigation.  Stipulation, ¶1.23.

## IV.   THE SETTLEMENT RESULTED FROM ARM'S-LENGTH SETTLEMENT NEGOTIATIONS

The Settling Parties' mediation session occurred on November 30, 2023.  In advance of that session, the Settling Parties exchanged (and submitted to Judge Wolfson) detailed mediation statements addressing liability and damages.  The mediation briefs addressed the specific evidence and legal arguments each side believed supported their respective claims and defenses.  At the end of this mediation, the Settling Parties accepted a mediator's proposal to settle the Litigation for $35 million, subject to the negotiation of a Stipulation of Settlement and approval by the Court.

## V.   PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD PLAINTIFF TO NOTIFY THE SETTLEMENT CLASS

Rule 23(e) requires court approval for any compromise of claims brought on a class basis.  Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class

- 7 -

4895-8836-0608.v1

proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval."). It is well established in this Circuit that the settlement of class-action litigation is both favored and encouraged. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *Curiale v. Lenox Grp., Inc.*, 2008 WL 4899474, at \*5 (E.D. Pa. Nov. 14, 2008) ("'The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'").

The *Manual for Complex Litigation* describes a three-step process for approving a class action settlement: (1) preliminary approval of the proposed settlement; (2) ordering dissemination of notice of the settlement to class members; and (3) a final approval hearing. *See Manual for Complex Litigation* §21.63 (4th ed. 2004). At this juncture, Lead Plaintiff requests that the Court: (1) enter the proposed Preliminary Approval Order; (2) certify the Settlement Class for settlement purposes; (3) order the dissemination of notice to the Settlement Class; and (4) set a time for the final approval hearing.

4895-8836-0608.v1

Pursuant to Rule 23(e), preliminary approval should be granted if the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see also Jones v. Com. Bancorp, Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007) ("Courts make a preliminary evaluation of the fairness of the settlement, prior to directing that notice be given to members of the settlement class."). Rule 23(e)(2) provides:

> (2)    Approval of the Proposal.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)    the class representatives and class counsel have adequately represented the class;
> >
> > (B)    the proposal was negotiated at arm's length;
> >
> > (C)    the relief provided for the class is adequate, taking into account:
> >
> > > (i)    the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv)    any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D)    the proposal treats class members equitably relative to each other.

- 9 -

4895-8836-0608.v1

Fed. R. Civ. P. 23(e)(2).  These factors overlap with those set forth by the Third Circuit in *Girsh*, which include:

> "(1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . ."[3]

521 F.2d at 157.  It has long been the case that "[t]he preliminary approval determination requires the Court to consider whether '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"  *In re Processed Egg Prods. Antitrust Litig.*, 2014 WL 828083, at *2 (E.D. Pa. Feb. 28, 2014) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003)).

These factors warrant preliminary approval here.

---

[3]   The *Girsh* factors "'are a guide and the absence of one or more does not automatically render the settlement unfair.'"  *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010).

- 10 -

## A.    The Proposed Settlement Is Fair

The first two factors for the Court's consideration under Rule 23(e)(2) are the adequacy of representation for the class and the arm's-length nature of the settlement negotiations.  *See* Rule 23(e)(2)(A)-(B).  These two factors dovetail into the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed.  *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) ("[A] presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors.").

Here, the Settlement is presumptively fair because it was the result of extensive arm's-length negotiations conducted by experienced counsel before a highly respected independent mediator and former Federal Judge, and the Settling Parties had an adequate understanding of the merits of the case.

*First*, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Litigation on its behalf, including, among other things, drafting complaints, opposing Defendants' motion to dismiss, appealing the Court's order dismissing the Litigation, and engaging in formal mediation.

Lead Counsel are highly competent lawyers who possess substantial experience in prosecuting complex securities class actions in this Circuit and

- 11 -

throughout the country, and have successfully prosecuted hundreds of securities class actions on behalf of damaged investors. *See In re AT&T Corp. Sec. Litig.*, 2005 WL 6716404, at *9 (D.N.J. Apr. 25, 2005) ("Lead Counsel [Robbins Geller] are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during [this] litigation substantiates this characterization."), *aff'd*, 455 F.3d 160 (3d Cir. 2006); *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, 2019 WL 4877563, at *3 (D.N.J. Oct. 3, 2019) (noting that Robbins Geller is "capable of adequately representing the class, both based on their prior experience in class action lawsuits and based on their capable advocacy on behalf of the class in this action").

Moreover, the Court-appointed Lead Plaintiff is a sophisticated institutional investor, overseeing hundreds of millions of dollars of investments. The collective experience, expertise, and tenacity of Lead Counsel, and the sophistication of Lead Plaintiff, led to this excellent result, which will provide significant and immediate relief to the Settlement Class.

Given Lead Counsel's efforts, there can be no doubt that "'counsel had an adequate appreciation of the merits of the case before negotiating'" the Settlement. *Warfarin*, 391 F.3d at 537; *Schering-Plough*, 2010 WL 1257722, at *10.

All of this provided a strong base upon which to evaluate the relative strengths and weaknesses of the claims and defenses in this case. *See Varacallo v. Mass. Mut.*

- 12 -

*Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *Alves v. Main*, 2012 WL 6043272, at \*22 (D.N.J. Dec. 4, 2012) ("[C]ourts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'"), *aff'd*, 559 F. App'x 151 (3d Cir. 2014); *Huffman v. Prudential Ins. Co.*, 2019 WL 1499475, at \*4 (E.D. Pa. Apr. 5, 2019) (The court should "'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action.'").

***Second***, the Settlement was negotiated at arm's length, as contemplated by Rule 23(e)(2)(B). As detailed above in §IV, the Settling Parties' settlement negotiations involved formal mediation with an experienced mediator. The negotiations were vigorous and adversarial, and the Defendants are represented by highly sophisticated counsel. It was not until after a full day of settlement negotiations that Judge Wolfson issued a "mediator's proposal" that recommended the amount of the Settlement, which the Settling Parties ultimately accepted. Judge Wolfson's direct participation further ensures that negotiations were non-collusive and conducted at arm's length. *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at \*10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in

- 13 -

settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'").[4]

## B. The Benefits Under the Settlement Are Adequate

Rule 23(e)(2)(C)(i), which overlaps with *Girsh* in many respects (*i.e.*, factors 1, 4-9), instructs the Court to consider the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal would inevitably impose. *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i), *with Girsh*, 521 F.2d at 157 (factor one focuses on the complexity, expense, and likely duration of the litigation). This aspect of Rule 23(e)(2)(C)(i) also weighs in favor of approval.

"Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *In re PAR Pharm. Sec. Litig.*, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013). This case would face a significant risk of substantial delay before ultimate resolution, including delays associated with briefing on the motion to dismiss, class certification, fact and expert discovery, summary judgment, scheduling trial, and potential appeals that could last for years into the future. *See Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 103 ("By reaching a favorable Settlement with most of the remaining Defendants prior to the disposition of Defendants' renewed dismissal motions or even an eventual trial, Class Counsel

---

4   *See also Sanders v. CJS Sols. Grp., LLC*, 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated for at arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement.").

- 14 -

have avoided significant expense and delay, and have also provided an immediate benefit to the Settlement Class."). The near-term relief that the Settlement provides to Settlement Class Members warrants approval in light of the delays inherent in continued litigation.

Further, the relief is fair, reasonable, and adequate considering the risks of continued litigation, which would require Lead Plaintiff to prove (and defeat Defendants' counterarguments regarding) falsity, materiality, scienter, loss causation, and damages at trial. *See Girsh*, 521 F.2d at 157 (risks of establishing liability, damages, and maintaining a class action support settlement approval).

Although Lead Plaintiff believes its case is strong, it acknowledges, as it must, there are risks to litigation and ultimate recovery, especially in light of the Third Circuit's decision reversing this Court on only the June 5, 2019 statement. Defendants' arguments, including the arguments in their motion to dismiss and appellate briefing, highlight the risks Lead Plaintiff would face in overcoming a second motion to dismiss on the remaining statement, summary judgment and ultimately proving its claims at trial. For example, Defendants have strenuously argued that the remaining statement was not false, but rather based on judgments and actuarial estimates, and not facts.

Defendants have also argued that Lead Plaintiff would be unable to establish the element of scienter, because defendant Tanji's statements on Investor Day

- 15 -

regarding mortality experience were consistent with the Company's actuarial review process, and therefore not recklessly or knowingly misleading. Defendants also argued that Prudential's purchase of approximately $330 million of its own stock during the June – August 2019 time frame further undercuts an inference of scienter. And Defendants have likewise challenged Lead Plaintiff's theory of loss causation (and therefore recoverable damages), maintaining that losses on the alleged "corrective disclosure" date would have to be disaggregated from other significant news disclosed on July 31, 2019, and the lack of any new news on August 1, 2019 about the charge upon which Lead Plaintiff's claims are premised.

Moreover, Lead Plaintiff's claims would be subject to complex expert testimony, offered by Defendants' experts, that would likely conflict with Lead Plaintiff's experts' analyses. Indeed, the opinions of each side's experts can vary substantially, and continued litigation poses the risks that Defendants would prevail in a "battle of experts." *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001). Such a battle would increase the expense – as well as the risk – involved with advancing the litigation toward a positive resolution for Lead Plaintiff and the Class, and a jury might credit Defendants' experts and accordingly reject Lead Plaintiff's claims. *See PAR Pharm.*, 2013 WL 3930091, at *6 (noting "the inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context").

- 16 -

The Settlement is a particularly strong result for the Class when balanced against those risks.  The $35 million recovery exceeds the average settlement value of $34 million in class action securities cases in 2023 when excluding settlements over $1 billion and far exceeds the median settlement value of $14.4 million in 2023. Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review*, at 18, fig. 17 (NERA Jan. 23, 2024).

Given the complexity of this case and the risks and delay inherent in continued litigation, the $35 million Settlement is an exceptional result.  Taking into account that the case has been litigated for more than four years, its anticipated length if it continued, and the significant amount of the recovery, the Settlement here falls well within the range of reasonableness in light of the attendant risks and uncertainties of continued litigation, and should be preliminarily approved.  *See Girsh*, 521 F.2d at 157.

## C.    The Other Rule 23(e)(2) Factors Are Met

Rule 23(e)(2) also enumerates three additional factors for the Court to consider in approving a settlement: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees; and (iii) the existence of any other "agreements."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) (2018 Amendments).  These factors also weigh in favor of preliminary approval.

4895-8836-0608.v1

### 1.    The Proposed Method for Distributing Relief Is Effective

As discussed below in §VII, the method of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) is effective and more than sufficient. The notice plan includes: (i) direct mail notice to all those who can be identified with reasonable effort; (ii) direct e-mail notification to hundreds of financial institutions that regularly monitor proposed securities class actions; and (iii) publication of the Summary Notice in *The Wall Street Journal* and an online newswire service. In addition, a case-specific website will be established such that relevant deadlines and key Settlement documents, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order, will be prominently posted. Proofs of Claim may be submitted online through the website.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan of Allocation was prepared with the assistance of Lead Plaintiff's damages consultant. Calculations were based primarily on the damages consultant's analysis estimating the amount of artificial inflation in the prices of Prudential common stock during the Class Period. A thorough claim-

- 18 -

review process, including how deficiencies will be addressed, is also explained in the Stipulation, ¶¶5.7-5.8.

### 2. Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The Settlement provides that Lead Counsel will apply to this Court for an award of attorneys' fees and expenses no later than 35 days prior to the Settlement Hearing. *See* Preliminary Approval Order, ¶21. As set forth in the proposed Notice, Lead Counsel will request attorneys' fees not to exceed 25% of the Settlement Amount and litigation expenses not to exceed $200,000, plus interest earned on both amounts.

This fee request is consistent with attorneys' fees regularly approved in connection with PSLRA securities class action settlements within this District and nationwide. *See, e.g.*, *In re Novo Nordisk Sec. Litig.*, No. 3:17-cv-00209-ZNQ-LHG, ECF 361 at 2 (D.N.J. July 13, 2022) (awarding 29% of $100 million settlement); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("'Courts within the Third Circuit often award fees of 25% to 33% of the recovery.'"); *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 2013 WL 12153597, at *1 (D.N.J. Jan. 30, 2013) (awarding attorneys' fees of 27.5% and expenses of $3.4 million on $164 million recovery); *In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *9 (D. Del. Nov. 19, 2018) (awarding 28% of $210 million settlement);

- 19 -

*Schuh v. HCA Holdings, Inc.*, 2016 WL 10570957, at \*1 (M.D. Tenn. Apr. 14, 2016) (awarding 30% of $215 million settlement); *In re Pfizer Inc. Sec. Litig.*, No. 04-cv-09866 (LTS), ECF 727 at 2 (S.D.N.Y. Dec. 21, 2016) (awarding 28% of $486 million settlement); *In re Genworth Fin. Sec. Litig.*, 2016 WL 7187290, at \*1-\*2 (E.D. Va. Sept. 26, 2016) (awarding 28% of $219 million settlement).

Lead Counsel's notice of its maximum expense request of $200,000 is based on the expenses that counsel incurred over four years of litigation and allows for any additional expenses incurred prior to final approval.

### 3. The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) calls for the disclosure of any other agreements entered into in connection with the settlement of a class action. The Settling Parties have entered into a supplemental agreement that provides that Defendants will have the right to terminate the Settlement in the event that timely and valid requests for exclusion from the Settlement Class exceed the criteria set forth in the Supplemental Agreement. *See* Stipulation, ¶7.3.[5]

---

[5] Also, as is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact individual settlements. In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera*.

- 20 -

4895-8836-0608.v1

### 4. Settlement Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), concerns whether the Settlement treats Settlement Class Members equitably. As discussed above, all Settlement Class Members are treated equitably under the terms of the Stipulation, which provides that each Settlement Class Member that properly submits a valid Proof of Claim and whose claim calculates to a recovery of $10.00 or more will receive a *pro rata* share of the Net Settlement Fund, calculated under the Plan of Allocation.

The Settlement satisfies each factor identified under Rule 23(e)(2), and the Third Circuit's *Girsh* opinion is satisfied. Moreover, pursuant to *Warfarin*, 391 F.3d at 535, the Settlement is entitled to a presumption of fairness. Given the litigation risks involved, and the complexity of the underlying issues, the $35 million recovery is an excellent one. Therefore, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is fair, reasonable and adequate, preliminary approval should be granted, and notice of the Settlement should be sent to the Settlement Class.

## VI. CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In preliminarily approving the proposed settlement, this Court should preliminarily determine that class treatment is appropriate.[6] *See Amchem Prods.,*

---

[6] The Third Circuit has found securities class actions to be particularly appropriate for resolving claims under the securities laws, "'since the effectiveness of the securities laws may depend in large measure on the application of the class action device.'" *In re DVI Inc. Sec. Litig.*, 249 F.R.D.

- 21 -

*Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard litigation and trial management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23). The Court need not, at this point, conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for final approval. *In re Nat'l Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 586 (3d Cir. 2014). "Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement." *Id.*

### 1.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

---

196, 200 (E.D. Pa. 2008) (quoting *Yang v. Odom*, 392 F.3d 97, 109 (3d Cir. 2004)), *aff'd* 639 F.3d 623 (3d Cir. 2011).

- 22 -

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This action meets these requirements.

**Numerosity:** Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Although the exact number of Settlement Class Members is not known, courts generally presume that the numerosity requirement has been satisfied "'when a class action involves a nationally traded security.'" *In re Cigna Corp Sec. Litig.*, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006). Here, numerosity is satisfied as Prudential's common stock was listed on the NYSE during the Class Period, with hundreds of millions of securities outstanding.

**Commonality:** Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality does not mean that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see also Kress v. Fulton Bank, N.A.*, 2021 WL 9031639, at *5 (D.N.J. Sept. 17, 2021) (same). The common issue "'must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to

- 23 -

4895-8836-0608.v1

the validity of each one of the claims in one stroke.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Securities fraud cases easily meet the commonality requirement, which is satisfied where class members have been injured by similar material misrepresentations or omissions, as is alleged here. *DVI*, 249 F.R.D. at 201 (Third Circuit courts "'have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made a misrepresentation that inflated the price of its stock.'").

**Typicality:** Rule 23(a)(3) requires that the representative's claim be typical of those of the members of the class. If "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001). "'Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.'" *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992). Here, Lead Plaintiff's claims are similar to those of the other members of the Settlement Class. Just like the other members of the proposed Settlement Class, Lead Plaintiff purchased Prudential stock at prices that were

- 24 -

allegedly artificially inflated by Defendants' allegedly false and misleading statements and allegedly were harmed when the alleged truth emerged. Lead Plaintiff's claims stand or fall with those of the Settlement Class, and thus, they are typical.

**Adequacy:** Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: *first*, the named plaintiffs' interests must be sufficiently aligned with the interests of the absentees; *second*, the plaintiffs' counsel must be qualified to represent the class. *Osgood v. Harrah's Ent., Inc.*, 202 F.R.D. 115, 126 (D.N.J. 2001). A named plaintiff is "adequate" if his interests do not conflict with those of the class. As explained herein, Lead Plaintiff and Lead Counsel are adequate representatives. Lead Plaintiff and Settlement Class Members purchased Prudential common stock during the Class Period, and alleged they were injured by the Defendants' alleged materially false and misleading statement. If Lead Plaintiff proves its claims at trial, it would also prove the Settlement Class's claims. *See Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). Lead Plaintiff has demonstrated its commitment to this Litigation by retaining qualified counsel. *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001). It has also diligently monitored the Litigation and, communicated with counsel

- 25 -

throughout the district court and appellate proceedings. *See Doherty v. Hertz Corp.*, 2014 WL 2916494, at \*4 (D.N.J. June 25, 2014).

### 2.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Settlement Class satisfies these requirements. "The focus of the predominance inquiry is on liability, not damages." *Smith v. Suprema Specialties, Inc.*, 2007 WL 1217980, at \*9 (D.N.J. Apr. 23, 2007) (citing cases). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, §1788 at 528 (1986). Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class. *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002), *aff'd*, 84 F. App'x 257 (3d Cir. 2004) ("The requirement that common questions of law or fact predominate over individual issues does not mean that the existence of individual issues defeats certification . . . ."). Here, the existence of common questions and their predominance over individual issues are exemplified by the fact that if every Settlement Class Member brought an individual action, each plaintiff

- 26 -

4895-8836-0608.v1

would be required to demonstrate the same omissions or misrepresentations to prove liability. Thus, this case is an example of the principle that the predominance requirement is "readily met" in many securities class actions. *Amchem*, 521 U.S. at 625.

Rule 23(b)(3) also requires that a class action would be a superior method of adjudicating Lead Plaintiff's and the Settlement Class Members' claims. Superiority "is easily satisfied in securities fraud cases where 'there are many individual plaintiffs who suffer damages too small to justify a suit against a large corporate defendant.'" *In re Heckmann Corp. Sec. Litig.*, 2013 WL 2456104, at *8 (D. Del. June 6, 2013). Courts have recognized that "[a] class action is certainly the superior method for adjudicating" securities fraud claims because "[g]enerally, 'as a practical matter, investors defrauded by securities law violations have no recourse other than class relief.'" *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 78 (D.N.J. 2019).[7]

### 3. Lead Counsel Should Be Appointed Counsel for the Settlement Class

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. The Court must consider the following: (1) the work Lead Counsel has done in identifying or investigating potential claims in the action; (2) Lead Counsel's

---

[7] Manageability is not an element relevant to the certification of a settlement class. *See Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested . . . .").

- 27 -

4895-8836-0608.v1

experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) Lead Counsel's knowledge of the applicable law; and (4) the resources counsel committed to representing the Class. *Nafar v. Hollywood Tanning Sys., Inc.*, 2008 WL 3821776, at \*7 (D.N.J. Aug. 12, 2008). As detailed herein, Lead Counsel is highly experienced in prosecuting class actions and has successfully prosecuted securities class actions in courts throughout the country (*see* www.rgrdlaw.com). Lead Counsel expended considerable time and effort in pursuing the claims in this Litigation over a four year period. Given Lead Counsel's extensive securities class action experience, they are knowledgeable and capable of evaluating cases to determine the appropriate settlement value and at what stage of the litigation a settlement should be pursued. Thus, Robbins Geller is more than adequate to serve as settlement class counsel.

## VII. THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

### A. Retention of Gilardi & Co. LLC as Claims Administrator

Gilardi is an experienced administrator for class action settlements, and has implemented many successful claims administration programs. *See* www.gilardi.com. Lead Plaintiff requests that the Court appoint Gilardi as Claims Administrator to provide all notices approved by the Court to Settlement Class Members, to process Proofs of Claim, and to administer the Settlement.

- 28 -

4895-8836-0608.v1

## B.    Proposed Notice Procedures

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions.  The Rule provides that a class action shall not be settled, dismissed, or compromised without the approval of the court, and notice of the proposed settlement, dismissal, or compromise shall be given to all members of the class in such a manner as the court directs.  Fed. R. Civ. P. 23(e).  The Rule provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  In addition, Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settling Parties have negotiated the form of the notices to be disseminated to all identified potential Settlement Class Members.  The proposed Notice, Summary Notice and Postcard Notice are attached to the proposed Preliminary Approval Order as Exhibits 1, 3, and 4 respectively.

The proposed Notice apprises Settlement Class Members of (among other things) the nature of the Litigation, the definition of the Settlement Class, the claims and issues in the Litigation, and the claims that will be released in the Settlement. The Notice also: (i) advises that a Settlement Class Member may enter an appearance through counsel if desired; (ii) describes the binding effect of a judgment on

- 29 -

Settlement Class Members under Rule 23(e)(3); (iii) states the procedures and deadline for Settlement Class Members to opt out of the Class or to object to the proposed Settlement, the proposed Plan of Allocation, and the requested attorneys' fees and expenses; (iv) states the procedures and deadline for Settlement Class Members to submit a Proof of Claim to recover from the Settlement; and (v) provides the date, time, and location of the Settlement Hearing. The Settling Parties further propose to supplement the Notice with the Summary Notice, to be published once in the national edition of *The Wall Street Journal*, and once over a national online newswire service. *See supra*, at §V.C.1.

The Notice also satisfies the PSLRA's specific notice requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per-share basis; (ii) that the Setting Parties do not agree on the average amount of damages per share that would be recoverable in the event Lead Plaintiff prevailed at trial, and stating the issue(s) on which the Settling Parties disagree; (iii) that Lead Counsel intends to make an application for an award of attorneys' fees and expenses, including the amount of the requested fees and expenses determined on an average per-share basis; (iv) contact information for Lead Counsel; and (v) the reasons the Settling Parties are proposing the Settlement.

The proposed plan for providing notice satisfies due process. As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval,

4895-8836-0608.v1

the Claims Administrator will mail the Postcard Notice (Exhibit 4 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, including through Prudential's transfer records. The Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. After entry of the Preliminary Approval Order, the Stipulation and exhibits, the Preliminary Approval Order, and the Notice and Proof of Claim form will be posted on the Settlement-designated website. Additionally, the Summary Notice will be published in *Investors' Business Daily* and transmitted over a national newswire service. Courts routinely find that comparable notice programs represent the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014); *Howard v. Arconic Inc.*, Civ. Action No. 2:17-cv-01057-MRH (W.D. Pa. May 2, 2023) (ECF 227), ¶11. *See also Jones*, 2007 WL 2085357, at *5 ("[T]he proposed distribution of notice to class members by first class mail is reasonable because no alternative method of distribution is more likely to notify class members."). For all of the foregoing reasons, the notice program should be approved by the Court.

## VIII. PROPOSED SCHEDULE OF EVENTS

The last step in the settlement approval process is to hold a Settlement Hearing at which the Court will hear argument and make a final decision about whether to approve the Settlement pursuant to Rule 23(e)(2). *See Manual for Complex Litigation*, *supra*, at §21.63.

Concurrent with this motion, Lead Plaintiff has submitted a proposed agreed-upon Preliminary Approval Order ("PAO"), which was negotiated with Defendants, setting forth the proposed schedule of Settlement-related events through final approval. Specifically, Lead Plaintiff proposes the following schedule:

| | |
|---|---|
| Date for commencing the mailing of the Postcard Notice to the Settlement Class, and posting of the Notice and Proof of Claim on the Settlement website (the "Notice Date") | 21 calendar days after the PAO is signed and entered |
| Deadline for publishing the Summary Notice | 7 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 35 days prior to the Settlement Hearing |
| Deadline for filing objections and submitting requests for exclusion | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Deadline for Lead Counsel to serve on Defendants' Counsel proof, by affidavit or declaration, of mailing and publishing | 7 calendar days prior to the Settlement Hearing |

- 32 -

| Deadline for Settlement Class Members to file Proofs of Claim | 120 days after the Notice Date |
|---|---|
| Settlement Hearing | At least 100 calendar days after the PAO is signed and entered, at the Court's convenience |

This proposed schedule complies with Rule 23 and due process, and will allow Settlement Class Members to recover from the Settlement in a timely fashion.

## IX.    CONCLUSION

Lead Plaintiff has obtained an excellent result for the Settlement Class under the circumstances of this case, and now respectfully requests that the Court grant its motion for preliminary approval and enter the Settling Parties' proposed Order Preliminarily Approving Settlement and Providing for Notice, being filed herewith.

DATED:  February 14, 2024

Respectfully submitted,

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN

/s/ Peter S. Pearlman
PETER S. PEARLMAN

Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)
psp@njlawfirm.com

- 33 -

4895-8836-0608.v1

SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: 212/584-0700
212/584-0799 (fax)
cseeger@seegerweiss.com

Local Counsel for Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
DANIEL J. PFEFFERBAUM
HADIYA K. DESHMUKH
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 34 -

4895-8836-0608.v1

- 35 -

VANOVERBEKE, MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Lead Plaintiff

4895-8836-0608.v1