SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  212/584-0700
212/584-0799 (fax)
E-mail: cseeger@seegerweiss.com

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)
E-mail: psp@njlawfirm.com

Local Counsel for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re PRUDENTIAL FINANCIAL, INC. SECURITIES LITIGATION | ) Civil Action No. 2:19-cv-20839-SRC-CLW ) ) <u>CLASS ACTION</u> |
| This Document Relates To:<br><br>ALL ACTIONS. | ) MEMORANDUM OF LAW IN SUPPORT ) OF LEAD PLAINTIFF'S MOTION FOR ) FINAL APPROVAL OF CLASS ACTION ) SETTLEMENT AND APPROVAL OF ) PLAN OF ALLOCATION |

Motion Return Date: June 13, 2024

4877-0212-4729.v1

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ....................................................................1

II. BACKGROUND .......................................................................................3

    A.  Procedural History..........................................................................3

        1.  The Initial Complaint and Lead Plaintiff Appointment..............3

        2.  Lead Counsel's Investigation and the Amended Complaint........................................................................3

        3.  Defendants' Motion to Dismiss .................................................4

        4.  Lead Plaintiff's Appeal ............................................................5

        5.  Mediation and Settlement .........................................................6

        6.  The Court's Preliminary Approval of the Settlement.................6

    B.  The Notice Program Approved by the Court ......................................7

III. THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT.............................8

IV. THE SETTLEMENT WARRANTS FINAL APPROVAL ...........................9

V.  THE SETTLEMENT MEETS ALL REQUIREMENTS FOR APPROVAL ...........................................................................................13

    A.  Lead Plaintiff and Lead Counsel Have More than Adequately Represented the Settlement Class .....................................................13

    B.  The Settlement Negotiations Were Conducted at Arm's-Length and with the Oversight of an Experienced Mediator ..........................15

    C.  The Settlement Is Adequate Considering the Costs, Risks, and Delays of Trial and Appeal ..............................................................17

- i -

**Page**

1. Risks and Costs of Establishing Liability and Damages ..........18

2. The Risks of Maintaining the Class Action Through Trial ......21

3. The Ability of Defendants to Withstand a Greater Judgment ................................................................................21

4. The Settlement Falls Well Within the Range of Reasonableness ..................................................................22

D. The Settlement Satisfies the Remaining Rule 23(e)(2) Factors..........24

1. The Proposed Method for Distributing Relief Is Effective ......24

2. The Requested Attorneys' Fees Are Reasonable.....................25

3. The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion .......................26

4. Class Members Will Be Treated Equitably, and the Reaction of the Class Supports Final Approval.......................26

E. The Settlement Satisfies the Applicable *Prudential* Factors ..............28

VI. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION .......28

II. CONCLUSION.................................................................................30

4877-0212-4729.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alves v. Main*,
2012 WL 6043272 (D.N.J. Dec. 4, 2012),
*aff'd*, 559 F. App'x 151 (3d Cir. 2014) ............................................................15

*Beltran v. SOS Ltd.*,
2023 WL 319895 (D.N.J. Jan. 3, 2023)....................................................*passim*

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
70 F.4th 668 (3d Cir. 2023) ...............................................................5, 12, 28

*Copley v. Evolution Well Servs. Operating, LLC*,
2023 WL 1878581 (W.D. Pa. Feb. 10, 2023)....................................................16

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ...................................................................9

*Frederick v. Range Res.-Appalachia, LLC*,
2022 WL 973588 (W.D. Pa. Mar. 31, 2022),
*aff'd*, 2023 WL 418058 (3d Cir. Jan. 26, 2023) ..........................................11, 12

*Fulton-Green v. Accolade, Inc.*,
2019 WL 4677954 (E.D. Pa. Sept. 24, 2019)....................................................17

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ...................................................................*passim*

*Huffman v. Prudential Ins. Co. of Am.*,
2019 WL 1499475 (E.D. Pa. Apr. 5, 2019)....................................................19

*In re AT&T Corp.*,
455 F.3d 160 (3d Cir. 2006) ...............................................................22, 23

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ...................................................................27

*In re Hemispherx Biopharma, Inc. Sec. Litig.*,
2011 WL 13380384 (E.D. Pa. Feb. 14, 2011)....................................................23

4877-0212-4729.v1

**Page**

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
2022 WL 16533571 (E.D. Pa. Oct. 28, 2022) ........................................28, 29, 30

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
2022 WL 717254 (E.D. Pa. Mar. 10, 2022) .................................................25, 26

*In re NFL Players' Concussion Inj. Litig.*,
307 F.R.D. 351 (E.D. Pa. 2015),
*amended*, 2015 WL 12827803 (E.D. Pa. May 8, 2015),
*aff'd*, 821 F.3d 410 (3d Cir. 2016)........................................................................16

*In re NFL Players Concussion Inj. Litig.*,
821 F.3d 410 (3d Cir. 2016) ...............................................................................12

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) ...........................................................23

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ............................................................9

*In re Valeant Pharms. Int'l Inc. Sec. Litig.*,
2020 WL 3166456 (D.N.J. June 15, 2020).............................................................12

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
2021 WL 358611 (D.N.J. Feb. 1, 2021)
*aff'd in part, dismissing appeal in part*,
*TIAA v. Valeant Pharms. Int'l, Inc.*,
2021 WL 6881210 (3d Cir. Dec. 20, 2021) ........................................................14

*In re Viropharma Inc. Sec. Litig.*,
2016 WL 312108 (E.D. Pa. Jan. 25, 2016).....................................................16, 19

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011),
*aff'd*, 838 F.3d 223 (2d Cir. 2016)...............................................................20

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ...........................................................................*passim*

- iv -

**Page**

*Jackson v. Wells Fargo Bank, N.A.*,
 136 F. Supp. 3d 687 (W.D. Pa. 2015)..................................................................22

*Kamfsky v. Honeywell Int'l Inc.*,
 2022 WL 1320827 (D.N.J. May 3, 2022).........................................12, 18, 19, 30

*McDermid v. Inovio Pharms., Inc.*,
 2023 WL 227355 (E.D. Pa. Jan. 18, 2023)...................................................*passim*

*McDermid v. Inovio Pharms., Inc.*,
 467 F. Supp. 3d 270 (E.D. Pa. 2020)..................................................................14

*Rossini v. PNC Fin. Servs. Grp., Inc.*,
 2020 WL 3481458 (W.D. Pa. June 26, 2020) ....................................................29

*Schuler v. Meds. Co.*,
 2016 WL 3457218 (D.N.J. June 24, 2016).........................................................23

*Se. Pa. Trans. Auth. v. Orrstown Fin. Servs., Inc.*,
 2023 WL 1454371 (M.D. Pa. Feb. 1, 2023)..................................................25, 26

*Sullivan v. DB Invs., Inc.*,
 667 F.3d 273 (3d Cir. 2011) ...............................................................................29

*Utah Ret. Sys. v. Healthcare Servs. Grp. Inc.*,
 2022 WL 118104 (E.D. Pa. Jan. 12, 2022)...................................................*passim*

*Whiteley v. Zynebra Pharms., Inc.*,
 2021 WL 4206696 (E.D. Pa. Sept. 16, 2021)....................................................20

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
 §78j(b)..................................................................................................................4
 §78t(a)..................................................................................................................4

**Page**

Federal Rules of Civil Procedure

Rule 23 ...........................................................................................1, 10, 11, 24

Rules 23(a) ..............................................................................................8, 9

Rules 23(b)(3) .........................................................................................8, 9

Rule 23(e) ..................................................................................................11

Rule 23(e)(2) ........................................................................................*passim*

Rule 23(e)(2)(A) ....................................................................................13, 15

Rule 23(e)(2)(B) .........................................................................................15

Rule 23(e)(2)(C)(i) .....................................................................................17

Rule 23(e)(2)(C)(ii) ....................................................................................24

Rule 23(e)(2)(C)(iii) ...................................................................................24

Rule 23(e)(2)(C) (iv) ..................................................................................24

Rule 23(e)(2)(D) ....................................................................................24, 26

Rule 23(e)(3) ..............................................................................................10

## SECONDARY AUTHORITIES

*Securities Class Action Settlements: 2023 Review and Analysis*,
Laarni T. Bulan and Laura E. Simmons
(Cornerstone Research 2024) ...........................................................................23

4877-0212-4729.v1

Lead Plaintiff City of Warren Police and Fire Retirement System ("City of Warren" or "Lead Plaintiff"), individually and on behalf of the Settlement Class, respectfully submits this memorandum in support of its motion for final approval of the class-wide Settlement of this Litigation, including the proposed Plan of Allocation for distributing Settlement proceeds (the "Motion").[1]

## I.    PRELIMINARY STATEMENT

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rules") and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), this Motion seeks final approval of the proposed Settlement following completion of the notice program approved by the Court. The Settlement provides for the payment of $35 million in cash (the "Settlement"). The Settlement here resulted from arm's-length mediation overseen by former District Court Chief Judge Freda Wolfson and represents an excellent recovery for the Settlement Class under the circumstances. The Settlement follows over four years of hard-fought litigation, including drafting a detailed amended complaint (the "Complaint") incorporating allegations based upon reports of former Prudential employees; opposing a complex motion to dismiss; pursuing a partially successful appeal of the dismissal of this case to the Third Circuit; and a full-

---

[1]    Unless otherwise defined herein, all capitalized terms have the meaning set forth in the Stipulation of Settlement, dated February 12, 2024 (ECF 60-2) (the "Stipulation") or the Declaration of Daniel J. Pfefferbaum in Support of: (1) Final Approval of Class Action Settlement; (2) Approval of Plan of Allocation; and (3) an Award of Attorneys' Fees and Expenses (the "Pfefferbaum Declaration"), filed herewith.

- 1 -

day mediation session, preceded by the submission and exchange of written mediation statements. Through these efforts, Lead Counsel possessed a full understanding of all relevant issues, which they brought to bear in negotiating and agreeing to the Settlement. The Settlement secured by Lead Plaintiff and Lead Counsel represents both an aggregate and percentage recovery significantly higher than the median settlement in recent securities class actions.

As detailed herein, the Settlement easily satisfies the factors set forth in Rule 23(e)(2) and *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), for approving class action settlements, balancing the objective of attaining the highest possible recovery against the risks of continued litigation. This includes the risk that the Settlement Class could receive nothing, or far less than the Settlement, after trial and any appeal. In addition, the Plan of Allocation treats Settlement Class Members equitably and ensures that each Authorized Claimant will receive a *pro rata* share of the proceeds from the Settlement. Moreover, given the absence of any objections to date, the Settlement appears to enjoy unanimous support from the Settlement Class.

Lead Plaintiff therefore respectfully requests that the Court grant final approval of the proposed Settlement and Plan of Allocation.

- 2 -

4877-0212-4729.v1

## II.    BACKGROUND

### A.    Procedural History

#### 1.    The Initial Complaint and Lead Plaintiff Appointment

Lead Plaintiff commenced this securities class action on November 27, 2019. ECF 1.

On March 20, 2020, the Court appointed City of Warren as Lead Plaintiff and approved its selection of Robbins Geller Rudman & Dowd LLP as Lead Counsel. ECF 21.

#### 2.    Lead Counsel's Investigation and the Amended Complaint

Prior to and after being appointed, Lead Counsel conducted a comprehensive investigation into Prudential's alleged wrongful acts, which included, *inter alia*, reviewing and analyzing Prudential's filings with the SEC and other publicly available material related to the Company – including articles and analyst reports. Lead Counsel also identified and obtained relevant information from former Prudential employees. Pfefferbaum Decl., ¶4(a).

On June 3, 2020, Lead Plaintiff filed the Amended Complaint for Violations of the Federal Securities Laws (the "Complaint"). ECF 22. The Complaint alleged that between February 15, 2019 and August 2, 2019, inclusive, Defendants issued materially false and misleading statements and/or failed to disclose adverse information regarding, among other things, the Company's life insurance reserves,

- 3 -

4877-0212-4729.v1

including the methodology and assumptions used to determine those reserves, the adequacy of those reserves to meet and current and future claims costs, quarterly and annual updates to those reserves, the potential for negative mortality development (*i.e.*, higher than expected death rates), and, as a result, the Company's current financial results and future prospects. Pfefferbaum Decl., ¶16. The Complaint alleged violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934.

### 3.    Defendants' Motion to Dismiss

On August 19, 2020, Defendants filed a motion to dismiss, arguing, among other things, that: (a) Lead Plaintiff failed to plead a strong inference of scienter; (b) the allegations regarding Prudential's reserve estimates were inactionable statements of opinion; (c) the alleged misstatements were either not false or misleading, were inactionable as puffery, or were protected forward-looking statements; (d) neither Item 303 nor Generally Accepted Accounting Principles ("GAAP") created a duty to disclose additional information; (e) Lead Plaintiff failed to plead loss causation; and therefore, (f) Lead Plaintiff's §20(a) claim must fail for lack of a §10(b) primary violation. Pfefferbaum Decl., ¶24. On October 7, 2020, Lead Plaintiff filed its opposition to the motion to dismiss. Lead Plaintiff argued that the Complaint adequately alleged each element of its claims with the requisite particularity, and that when the accounts of former Prudential employees were properly credited, and all inferences drawn in favor of Lead Plaintiff as required at the

- 4 -

pleading stage, the Complaint should be upheld. *Id.*, ¶25. Defendants filed their reply brief on November 6, 2020. On December 29, 2020, the Court issued an opinion granting Defendants' motion to dismiss on the basis that Lead Plaintiff failed to adequately plead a false or misleading statement, and dismissed the Complaint with prejudice.

### 4.      Lead Plaintiff's Appeal

On January 26, 2021, Lead Plaintiff filed a timely appeal to the Third Circuit Court of Appeals. On February 10, 2021, Lead Plaintiff filed its Concise Summary of the Case, as required by Third Circuit LAR 33.3, and its opening brief on April 22, 2021. Defendants filed their Opposition Brief on June 21, 2021. Lead Plaintiff filed its Reply Brief on July 12, 2021. Oral argument on Lead Plaintiff's appeal was held on October 27, 2021.

On June 13, 2023, the Third Circuit issued a precedential opinion partially vacating the District Court's judgment with respect to the falsity of one alleged misrepresentation and remanded the case to the District Court to consider the adequacy of the Complaint's allegations with respect to scienter and loss causation. *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668 (3d Cir. 2023). The Third Circuit's decision shortened the proposed class period to June 5, 2019 through August 2, 2019, inclusive. *Id.*

### 5. Mediation and Settlement

Following remand of the Litigation, the Court held a status conference, during which it advised the parties to consider pursuing mediation with former District Court Chief Judge Freda Wolfson. Pfefferbaum Decl., ¶33.

The parties participated in a full-day mediation session with Judge Wolfson on November 30, 2023. *Id.*, ¶40. In advance of the mediation, the parties exchanged and provided to Judge Wolfson mediation statements with supporting exhibits. *Id.*

During the mediation, the parties negotiated in good faith, and at the end of the day Judge Wolfson made a mediator's proposal to settle the case for $35 million. The parties accepted the proposal. Their agreement included, among other things, the parties' agreement to settle the Litigation for mutual releases and a cash payment of $35 million. The parties negotiated and signed a stipulation of settlement on February 12, 2024.

### 6. The Court's Preliminary Approval of the Settlement

On February 14, 2024, Lead Plaintiff filed its Motion for Preliminary Approval of Class Action Settlement, together with supporting papers, including the Stipulation of Settlement, which set forth the terms and conditions of the Settlement. ECF 60. On March 8, 2024, the Court entered an Order granting preliminary approval of the Settlement and authorizing notice to the Settlement Class (the "Preliminary Approval Order"). ECF 71. As provided therein, objections to the Settlement, or requests to be

4877-0212-4729.v1

excluded from the Settlement Class, are due by May 23, 2024, and a Settlement Hearing is scheduled for June 13, 2024, at 10:00 a.m. *Id.*

### B.    The Notice Program Approved by the Court

In the Preliminary Approval Order, the Court approved the form and content of the Postcard Notice, Notice and Summary Notice, and ordered the Claims Administrator, Gilardi & Co. LLC ("Gilardi"), to (i) send the Postcard Notice to potential Class Members by email or First-Class Mail (where email addresses are not available) by no later than April 1, 2024; and (ii) publish the Summary Notice by no later than April 8, 2024. ECF 71, ¶10. The Court further found that these notice procedures "meet the requirements of [Rule] 23 . . . the [PSLRA], and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto." *Id.*, ¶7.

The notice program approved by the Court has since been carried out. On April 1, 2024, Gilardi established the settlement website at www.PrudentialSecuritiesSettlement.com, which includes, among other things, the Stipulation, the Notice, the Proof of Claim and Release, and an online claim submission page. *See* Declaration of Ross D. Murray ("Murray Decl."), ¶13, filed herewith. Distribution of the Postcard Notice took place on April 1, 2024. *Id.*, ¶¶5-7. Additionally, Gilardi received the names, addresses, and email addresses of additional Class Members or requests for additional Postcard Notices by numerous nominee

- 7 -

holders. *Id.*, ¶9.  In total, 104,875 potential Class Members were notified of the Settlement by mail or email. *Id.*, ¶10.  On April 8, 2024, Gilardi also published the Summary Notice in *The Wall Street Journal*, and over a national newswire. *Id.*, ¶11. To date, there have been no objections to any aspect of the Settlement.  Nor have any Class Members requested exclusion from the Settlement Class. *Id.*, ¶¶14-15.

## III.   THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In its motion for preliminary approval of the Settlement, Lead Plaintiff requested that the Court certify the Class for settlement purposes so that notice of the Settlement, the Settlement Hearing, and the rights of Class Members to object to the Settlement, request exclusion from the Class, or submit Proofs of Claim, could be issued. *See* ECF 60-1 at 21-28.  In the Preliminary Approval Order, the Court addressed the requirements for class certification as set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  The Court found that Rules 23(a) and (b)(3) were satisfied for purposes of settlement. ECF 71, ¶¶2-3.  Specifically, in the Preliminary Approval Order, the Court preliminarily certified a Class of "all Persons who purchased the common stock of Prudential Financial, Inc. between June 5, 2019 and August 2, 2019, inclusive." *Id.*, ¶2.  In addition, the Court preliminarily certified Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel. *Id.*, ¶4.

4877-0212-4729.v1

Nothing has changed since the Court's entry of the Preliminary Approval Order to alter the propriety of the Court's preliminary certification of the Class for settlement purposes. Thus, for all of the reasons stated in Lead Plaintiff's motion for preliminary approval (incorporated herein by reference), Lead Plaintiff respectfully requests that the Court affirm its preliminary certification and finally certify the Class for purposes of carrying of the Settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and appoint Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel.

## IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL

In the Third Circuit, there is a "strong presumption in favor of voluntary settlement agreements," which is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"[2] *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *5 (E.D. Pa. Feb. 27, 2024) (same).

Rule 23(e)(2) governs the settlement of class action claims. It provides that a class action settlement may be approved by the Court upon a finding that it is "fair,

---

[2]    Unless otherwise noted, citations are omitted, and emphasis is added throughout.

reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To guide that assessment, the rule directs the Court to consider whether:

> (A)    the class representatives and class counsel have adequately represented the class;

> (B)    the proposal was negotiated at arm's length;

> (C)    the relief provided for the class is adequate, taking into account:

> > (i)    the costs, risks, and delay of trial and appeal;

> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

> > (iv)    any agreement required to be identified under Rule 23(e)(3);

> and

> (D)    the proposal treats class members equitably relative to each other.

*Id.* The first two factors focus on "procedural" concerns, whereas the final two focus on the "substantive" terms of the settlement. Fed. R. Civ. P. 23, Advisory Committee Note to 2018 Amendments (the "2018 Advisory Note"). These points of inquiry overlap with the nine factors that traditionally guided the fairness analysis, as adopted by the Third Circuit in *Girsh*:

> "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings

- 10 -

and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

521 F.2d at 157 (ellipses omitted); *see also Frederick v. Range Res.-Appalachia, LLC,* 2022 WL 973588, at *14 (W.D. Pa. Mar. 31, 2022) (Rule 23(e)(2) "overlap[s]" with *Girsh*), *aff'd*, 2023 WL 418058 (3d Cir. Jan. 26, 2023).[3]

In 1999, in *In re Prudential Ins. Co. of Am. Sales Prac. Litig. Agent Actions*, the Third Circuit added additional factors for a court to consider, when appropriate. *See* 148 F.3d 283, 323 (3d Cir. 1999). These factors include: "the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results

---

[3]   Rule 23(e) was amended in 2018 to specify the matters which trial courts must consider when evaluating whether a proposed settlement is fair, reasonable, and adequate. As explained in the accompanying 2018 Advisory Note, this amendment was not designed to "displace" any of the multi-factor tests used by courts to review class action settlements, such as *Girsh*, but rather to focus the inquiry. Fed. R. Civ. P. 23, 2018 Advisory Note, subdiv. (e)(2).

- 11 -

4877-0212-4729.v1

achieved – or likely to be achieved – for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable." *Id.*

Both the *Girsh* and *Prudential* factors "'are a guide and the absence of one or more does not automatically render the settlement unfair.'" *Kamfsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *4 (D.N.J. May 3, 2022). Instead, the Court "must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh*." *In re Valeant Pharms. Int'l Inc. Sec. Litig.*, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020).

Finally, the Third Circuit has repeatedly held that a class action settlement is entitled to an initial presumption of fairness if: "'(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Warfarin*, 391 F.3d at 535; *see also In re NFL Players Concussion Inj. Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (same).

As described below and in the Pfefferbaum Declaration, the Settlement is an outstanding result under the circumstances, is presumptively fair, and clearly satisfies each element of Rule 23(e)(2) and the *Girsh* and *Prudential* factors. This is especially

- 12 -

so in light of the difficulty in proving falsity, materiality, scienter, loss causation, and damages.

## V.   THE SETTLEMENT MEETS ALL REQUIREMENTS FOR APPROVAL

### A.   Lead Plaintiff and Lead Counsel Have More than Adequately Represented the Settlement Class

The first factor under Rule 23(e)(2) addresses the adequacy of representation by the class representative(s) and class counsel. Fed. R. Civ. P. 23(e)(2)(A). This overlaps with the third *Girsh* factor, which covers the stage of proceedings and the amount of discovery completed. *See Girsh*, 521 F.2d at 157; *see also Warfarin*, 391 F.3d at 535 (similar factor for presumption of fairness).

The Court previously expressed confidence in the abilities of Lead Plaintiff and Lead Counsel by appointing each to their respective positions. *See* ECF 21. The Court's confidence was well-placed as, since then, they have vigorously pursued this Litigation. Among many other undertakings, Lead Counsel conducted a thorough investigation into the alleged violations of the federal securities laws; drafted a detailed amended complaint; opposed Defendants' motion to dismiss; appealed the Court's dismissal of the case to the Third Circuit, resulting in a partial remand of the case; utilized the services of experts and consultants, including investigators, forensic accountants, and a damages expert; prepared a mediation statement; and engaged in settlement negotiations and a mediation session led before an experienced mediator.

- 13 -

*See generally* Pfefferbaum Decl.  At each of these stages, Lead Counsel successfully advanced this case on behalf of the Settlement Class.

Lead Counsel are highly qualified lawyers well-versed in prosecuting complex class actions under the federal securities laws.  Robbins Geller has successfully prosecuted hundreds of securities class actions on behalf of damaged investors.  *See, e.g.*, *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 358611, at *6 (D.N.J. Feb. 1, 2021) (finding Robbins Geller skilled and efficient and noting that it "achieved a $1.21 billion settlement – the ninth largest PSLRA class action ever recovered – for the benefit of the class") *aff'd in part, dismissing appeal in part, TIAA v. Valeant Pharms. Int'l, Inc.*, 2021 WL 6881210 (3d Cir. Dec. 20, 2021); *McDermid v. Inovio Pharms., Inc.*, 467 F. Supp. 3d 270, 281 (E.D. Pa. 2020) ("Robbins Geller is a preeminent litigation firm with a record of winning complex securities class actions."); *see also* accompanying Declaration of Daniel J. Pfefferbaum Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, Ex. E (Robbins Geller firm resume).  In addition, as a sophisticated institutional investor that provides pension service and benefits to its Police and Fire Department participants and their families, City of Warren's support for the Settlement carries substantial weight.  *See* Declaration of Lead Plaintiff, ¶5, filed herewith.

- 14 -

4877-0212-4729.v1

Lead Plaintiff and Lead Counsel have thus adequately represented the Settlement Class under Rule 23(e)(2)(A) and have secured "'an adequate appreciation of the merits of the case.'" *Warfarin*, 391 F.3d at 537. "[C]ourts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'" *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014). Bringing their experience and knowledge of this case to bear, Lead Plaintiff and Lead Counsel all believe that the Settlement is in the best interests of the Class.

### B.    The Settlement Negotiations Were Conducted at Arm's-Length and with the Oversight of an Experienced Mediator

The second factor under Rule 23(e)(2) considers whether the Settlement was negotiated at arm's length. *See* Rule 23(e)(2)(B). A class action is considered presumptively fair where, as here, the parties, through capable counsel, have engaged in arm's-length negotiations. *See also Warfarin*, 391 F.3d at 535 (citing arm's-length negotiations as a factor in assessing presumption of fairness).

The parties engaged in arm's-length negotiations, including mediation conducted by an experienced mediator, former Chief Judge Wolfson. In advance of the mediation session, the parties prepared and exchanged opening statements. These mediation statements were extensively informed by the facts obtained throughout the investigation and litigation process. The parties negotiated in good faith, and

- 15 -

ultimately agreed to the mediator's proposal to settle the case.  Pfefferbaum Decl., ¶40.

This record clearly demonstrates that the parties negotiated at arm's length.  *See Copley v. Evolution Well Servs. Operating, LLC*, 2023 WL 1878581, at *4 (W.D. Pa. Feb. 10, 2023) (settlement from mediation sessions before experienced mediator was "arm's length"); *Utah Ret. Sys. v. Healthcare Servs. Grp. Inc.*, 2022 WL 118104, at *8 (E.D. Pa. Jan. 12, 2022) (involvement of neutral mediator points to an arm's-length negotiation).   Indeed, participation of an "independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *McDermid v. Inovio Pharms., Inc.*, 2023 WL 227355, at *5 (E.D. Pa. Jan. 18, 2023) (alteration in original).

When a settlement results from arm's-length negotiations, the assessment by experienced counsel that a settlement is in the best interest of the class is entitled to "considerable weight." *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016) (courts "'afford[] considerable weight to the views of experienced counsel regarding the merits of the settlement'"); *In re NFL Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) ("'A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.'"), *amended*, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016).  This flows

- 16 -

4877-0212-4729.v1

from the principle that "a settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution." *Fulton-Green v. Accolade, Inc.*, 2019 WL 4677954, at *9 (E.D. Pa. Sept. 24, 2019).  Bringing its experience and knowledge of this case to bear, Lead Counsel believes that the Settlement is in the best interests of the Class.  This factor thus weighs strongly in favor of approval.

### C. The Settlement Is Adequate Considering the Costs, Risks, and Delays of Trial and Appeal

The third consideration under Rule 23(e)(2), which overlaps with *Girsh* factors 1 and 4-9, is the adequacy of the settlement in light of the costs, risks, and delay of continued litigation.  Fed. R. Civ. P. 23(e)(2)(C)(i).  Securities cases are "'notably complex, lengthy, and expensive . . . to litigate.'"  *Beltran v. SOS Ltd.*, 2023 WL 319895, at *4 (D.N.J. Jan. 3, 2023) (Pascal, M.J.), *report & recommendation adopted*, 2023 WL 316294 (D.N.J. Jan. 19, 2023).  This case has already been pending for over four years, has been reduced to a single alleged misrepresentation for a shortened class period, and has not proceeded beyond the pleading stage.  Lead Plaintiff would undoubtedly face substantial additional costs, risks, and delays were litigation to continue, including in subsequent motion to dismiss briefing on scienter and loss causation, fact and expert discovery, summary judgment, trial, and appeal.  At a minimum, proceeding through these stages of litigation would significantly prolong the time until any Class Member receives a financial recovery.  "The Court weighs the

- 17 -

value of an immediate guaranteed settlement against the challenges that remain in proceeding with litigation." *Honeywell*, 2022 WL 1320827, at \*5. As explained below, the Settlement is more than adequate in light of these obstacles.

### 1. Risks and Costs of Establishing Liability and Damages

Lead Plaintiff and Lead Counsel believe that their case is strong but acknowledge that there would be risks involved in further litigation. Defendants have contested each of Lead Plaintiff's allegations, maintaining that: (a) performance in the Hartford Block of policies was not indicative of performance of Individual Life as a whole; (b) Defendant Tanji spoke the truth about Prudential's ongoing actuarial assumption review; (c) Defendant Tanji's June 5 Investor Day statements, even if found misleading, were not made recklessly or knowingly; (d) the actuarial assumption review process was extremely complex and could not be simplified in the manner in which Lead Plaintiff alleged; and (e) even if the fraud had occurred, the revelation of other significant news disclosed on July 31, 2019 would make it impossible for Lead Plaintiff to recover the amount of damages to which it believes the Class is entitled. Pfefferbaum Decl., ¶44.

Further, nearly all of the evidence would need to be reviewed by subject-matter experts given the complex nature of Lead Plaintiff's claims. As courts recognize, "proving damages in securities fraud cases . . . 'invariably requires expert testimony which may, or may not be, accepted by a jury.'" *SOS Ltd.*, 2023 WL 319895, at \*5.

- 18 -

4877-0212-4729.v1

Because Lead Plaintiff bears the burden of proof, Defendants could win at summary judgment on any of these issues through a prevailing *Daubert* motion. If the case proceeded to trial, these issues would be resolved through an inherently uncertain "battle of the experts." *Viropharma*, 2016 WL 312108, at *12; *see also Inovio*, 2023 WL 227355, at *8 ("[c]onflicting expert testimony at trial would introduce further uncertainty"); *SOS Ltd.*, 2023 WL 319895, at *5 (battle of experts "can go either way").

While there are strong responses to Defendants' arguments on liability and damages, they pose undeniable risks. Any one of these arguments, if successful, could have resulted in the claims at issue being severely curtailed or even eliminated. *See Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019) (Courts should "'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action.'"). Moreover, any trial victory for Lead Plaintiff would inevitably lead to an appeal, which at a minimum would have resulted in substantial delays before any financial recovery. *See Honeywell*, 2022 WL 1320827, at *4 ("The time and expense of a securities class action trial is substantial and would very likely lead to post-trial motions and subsequent appeals . . . ."). The risks associated with establishing liability and

- 19 -

4877-0212-4729.v1

damages at trial, and preserving any trial victory through appeal, thus weigh in favor of approving the Settlement.

At a minimum, the Settlement spares the Class the substantial costs and delays associated with further litigation. *Inovio*, 2023 WL 227355, at *6. Indeed, it is not uncommon for a securities fraud case to take many years to proceed from filing through appeal.[4] This case is no exception. Here, after four years of litigation, the parties still have not started the discovery phase of the litigation. Based on the course of litigation to date, continued proceedings would likely be lengthy, procedurally complex, and thus costly.

In short, a potential recovery for the Class – if any – would occur years from now after incurring significant costs. By contrast, the Settlement provides an immediate and substantial recovery without the risks, expense, and delays of continued litigation. The risks and costs associated with establishing liability and damages at trial and appeal thus weigh in favor of approving the Settlement. *See SOS Ltd.*, 2023 WL 319895, at *5 ("certainty" of settlement is favorable to the "gamble" of bringing securities claims to trial); *Whiteley v. Zynebra Pharms., Inc.*, 2021 WL

---

[4]  The time required to prosecute a full-length securities claim to fruition itself poses the risk that a change in law could jeopardize even seemingly secure victories under then-existing standards. *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011) (Supreme Court decision after entry of verdict in plaintiffs' favor reduced a billion-dollar verdict into a $78 million recovery in case brought in 2005), *aff'd*, 838 F.3d 223 (2d Cir. 2016).

- 20 -

4877-0212-4729.v1

4206696, at *3 (E.D. Pa. Sept. 16, 2021) ("[A]voidance of unnecessary expenditure of time and resources benefits all parties and weighs in favor of approving the settlement.").

### 2. The Risks of Maintaining the Class Action Through Trial

Lead Plaintiff's class certification motion has not yet been filed. Defendants would invariably vigorously oppose the motion. Had the Court declined to certify the class, the case would likely be over. Even if the Court grants an eventual class certification motion, Defendants still could have pressed a Rule 23(f) interlocutory petition or moved to decertify the class or trim the class period before trial or on appeal, as class certification may be reviewed at any stage of the litigation. *SOS Ltd.*, 2023 WL 319895, at 5.[5] Therefore, the sixth *Girsh* factor supports approval of the Settlement.

### 3. The Ability of Defendants to Withstand a Greater Judgment

This *Girsh* factor is neutral. Although Defendants may be able to withstand a greater judgment, "where the other *Girsh* factors weigh in favor of approval, this factor should not influence the overall conclusions that the settlement is fair, reasonable, and adequate." *Healthcare Servs. Grp.*, 2022 WL 118104, at *10.

---

[5] The class period has already been shortened by virtue of the Third Circuit's decision. *See supra* at §IV.A.4.

- 21 -

### 4.    The Settlement Falls Well Within the Range of Reasonableness

"'The last two *Girsh* factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial.'" *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 705 (W.D. Pa. 2015). In making this "range of reasonableness" assessment, courts do not need to make a precise estimate of damages. *See Inovio*, 2023 WL 227355, at *8 ("[T]he inability to determine the precise amount of damages . . . does not render the Court unable to conduct this [range of reasonableness] analysis."). "These factors examine 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'" *Healthcare Servs. Grp.*, 2022 WL 118104, at *10 (quoting *Warfarin*, 391 F.3d at 538). "'" [T]he fact that a proposed settlement may only amount to a fraction of the potential recovery'"" is not dispositive, particularly in securities class actions. *In re AT&T Corp.*, 455 F.3d 160, 170 (3d Cir. 2006). Rather, the recovery must be considered relative to "'all the risks considered under *Girsh*.'" *Id.*

It is not possible to quantify precisely the risks to recovery posed by Defendants' arguments as to falsity, materiality, scienter, loss causation, and damages described above. Nevertheless, the Settlement represents a substantial percentage of damages that could reasonably be expected to be proved at trial. "Typical settlement recoveries in securities class action cases range from roughly 1.6 to 14 percent." *SOS Ltd.*, 2023 WL 319895, at *6 (recovering approximately 6.5%). The $35 million

- 22 -

recovery under the Settlement – or approximately 17% of the total estimated recoverable damages – surpasses many securities class action settlements in this Circuit. *See, e.g.*, *Healthcare Servs. Grp.*, 2022 WL 118104, at *8 (6.4% recovery); *Schuler v. Meds. Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (4% recovery); *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *8 (D.N.J. July 29, 2013) (7% recovery); *In re Hemispherx Biopharma, Inc. Sec. Litig.*, 2011 WL 13380384, at *6 (E.D. Pa. Feb. 14, 2011) (5.2% recovery); *see also AT&T*, 455 F.3d at 170 (affirming approval of settlement that provided a 4% recovery).

This recovery of approximately 17% of recoverable damages significantly exceeds the 4.5% median settlement as a percentage recovery in securities class actions settled in 2023 and the 4.8% median settlement recovery for those cases settled between 2014-2022. *See* Exhibit 1 attached hereto, at 6, fig. 5 (Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2023 Review and Analysis* (Cornerstone Research 2024)).

In addition, the aggregate financial recovery of $35 million is significantly larger than the median securities class action settlement values over the last five years, which range from $11.7 million to $15 million. *See id.* at 1.

Moreover, while Lead Plaintiff estimates that the cash recovery represents approximately 17% of potentially recoverable damages, this assumes that Lead Plaintiff would prevail on all of its arguments regarding the causes of the declines in

Prudential's stock price on the "corrective disclosure" dates that Lead Plaintiff alleged, among other issues. Pfefferbaum Decl., ¶60. A jury could find at trial that recoverable damages are significantly lower, and thus the Settlement would represent a larger percentage recovery for Class Members.

Given the complexity of this case and the risks and delay inherent in continued litigation, a $35 million recovery is an outstanding result. Taking into account that this case has been litigated for more than four years, and the significant amount of the recovery, the Settlement here falls well within the range of reasonableness and should be approved. *See Girsh*, 521 F.2d at 157.

### D.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

The remaining factors of Rule 23(e)(2) require courts to consider: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees, including the timing of payment; (iii) the existence of any other agreements; and (iv) whether the settlement treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv); Fed. R. Civ. P. 23(e)(2)(D). These factors also support approval here.

### 1.    The Proposed Method for Distributing Relief Is Effective

Under Rule 23(e)(2)(C)(ii), the court must "scrutinize the method of claims processing to ensure that it facilitates [the] filing of legitimate claims." Fed. R. Civ. P.

4877-0212-4729.v1

23, 2018 Advisory Note, subdiv. (e)(2).  Here, the method for processing claims follows well-established and effective procedures.  Class Members must provide basic personal information and trading records to substantiate their transactions in Prudential common stock.  Requiring such documentation is reasonable because "there is no central repository of the owners of the securities" and it "prevent[s] fraudulent claims."  *SOS Ltd.*, 2023 WL 319895, at \*7; *see also In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.* ("*Innocoll I*"), 2022 WL 717254, at \*5 (E.D. Pa. Mar. 10, 2022) (It is "standard" to require the submission of records "proving ownership of the shares" in securities cases.).  In addition, claimants have the opportunity to cure claim deficiencies or request that the Court review any claim denial (Stipulation, ¶¶5.7-5.8).  *See Se. Pa. Trans. Auth. v. Orrstown Fin. Servs., Inc.*, 2023 WL 1454371, at \*11 (M.D. Pa. Feb. 1, 2023) (allowing claimants to "cure any deficiencies . . . or request that the Court review a denial" supports approval under Rule 23(e)(2)).

## 2.    The Requested Attorneys' Fees Are Reasonable

As set forth in more detail in the accompanying Memorandum of Law in Support of Motion for Attorneys' Fees and Litigation Expenses ("Fee Brief"), Lead Counsel's request for an award of attorneys' fees of 25% of the Settlement Fund is reasonable and appropriate.  Further, because the $35 million cash component of the Settlement has already been fully funded, there is no risk that counsel will be paid but

- 25 -

Class Members will not.  Importantly, the Settlement may not be terminated based on a ruling regarding attorneys' fees.  *See* Stipulation, ¶7.5.  This further supports approval.  *See Innocoll I*, 2022 WL 717254, at *5.

### 3. The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion

As discussed in the motion for preliminary approval, and described in the Notice, Lead Plaintiff and Defendants have entered into a standard supplemental agreement providing Defendants with the right (but not the obligation) to terminate the Settlement in the event valid requests for exclusion from the Class exceed the criteria set forth in that agreement.  As other courts have recognized, "'[t]his type of agreement is standard in securities class action settlements,'" *Orrstown Fin. Servs.*, 2023 WL 1454371, at *12, and "does not affect the adequacy of the relief provided to the class." *Inovio Pharms.*, 2023 WL 227355, at *6.[6]

### 4. Class Members Will Be Treated Equitably, and the Reaction of the Class Supports Final Approval

Rule 23(e)(2)(D) requires the Court to consider whether class members will be treated equitably.  All Class Members will be treated equitably under the terms of the Stipulation, which provides that each Class Member who properly submits a valid Proof of Claim – including Lead Plaintiff – will receive a *pro rata* share of the

---

[6] Pursuant to the Court's Order (ECF 61), the Supplemental Agreement was provided to the Court for its *in camera* review.

- 26 -

Settlement proceeds based on the terms of the Plan of Allocation. This treats Class Members fairly, relative to one another. *See Inovio Pharms.*, 2023 WL 227355, at *6 (plan that provides payments proportional to investment losses treats class members equitably); *Healthcare Servs. Grp.*, 2022 WL 118104, at *9 (finding class members treated equally because "plan of allocation apportions the net settlement fund among class members based on when they purchased and sold their HCSG common stock. This method ensures that settlement class members' recoveries are based on the relative losses they sustained, and eligible class members will receive a pro rata distribution from the net settlement fund calculated in the same manner.").

Further, out of the thousands of potential Class Members, there have been no objections filed to date. Pfefferbaum Decl., ¶56. "[W]hen . . . objectors are few and the class members many, there is a strong presumption in favor of approving the settlement." *Healthcare Servs. Grp.*, 2022 WL 118104, at *9. "The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement . . . ." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). To the extent that any objections to the Settlement are made subsequent to this filing, they will be addressed in Lead Plaintiff's reply.

- 27 -

4877-0212-4729.v1

### E.    The Settlement Satisfies the Applicable *Prudential* Factors

In addition to the Rule 23(e)(2) and *Girsh* factors, the applicable *Prudential* factors support the Settlement.  Lead Plaintiff is well-informed of the strengths and weaknesses of the case after an extensive investigation and significant litigation and has made an informed decision about the appropriate settlement value of its claims; Class Members had an opportunity to opt out of the Class; the method for processing claims is fair and reasonable; and, as explained in the Fee Brief, the requested attorneys' fees are fair and reasonable.  *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2022 WL 16533571, at *7-*8 (E.D. Pa. Oct. 28, 2022) ("*Innocoll II*").

Each factor identified in Rule 23(e)(2) and the Third Circuit's *Girsh* and *Prudential* opinions is satisfied.  Moreover, pursuant to *Warfarin*, the Settlement is entitled to a presumption of fairness.  391 F.3d at 535.  Given the litigation risks involved, and the complexity of the underlying issues, a recovery of $35 million in cash is an excellent result and could not have been achieved without the commitment of Lead Plaintiff and the hard work of Lead Counsel.  Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is fair, reasonable, and adequate, and should be granted final approval.

## VI.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

As set forth in the Notice, the Net Settlement Fund will be divided among Class Members who submit valid Claims pursuant to the Plan of Allocation.  *See* Murray

- 28 -

4877-0212-4729.v1

Decl., Ex. B (Notice). "'[A]pproval of a plan of allocation . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'" *Innocoll II*, 2022 WL 16533571, at *8. A plan of allocation need not be "'perfect,'" it "'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *SOS Ltd.*, 2023 WL 319895, at *9. "'Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.'" *Rossini v. PNC Fin. Servs. Grp., Inc.*, 2020 WL 3481458, at *17 (W.D. Pa. June 26, 2020) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011)).

Here, the proposed Plan of Allocation is fair and reasonable. The Plan of Allocation was developed with the assistance of Lead Counsel's damages consultant. *See* Pfefferbaum Decl., ¶¶51-52. The Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis, as determined by the ratio between each valid claim and the sum of all valid claims. The calculation of each claim will depend upon several factors, including when the Prudential shares were purchased or acquired, and whether they were sold or held. Once each claim is calculated and verified, and the distribution ratio is determined, the Net Settlement Fund (*i.e.*, the Settlement Fund less Notice and Administration Expenses, Taxes and Tax Expenses, and all Court-approved attorneys' fees and litigation expenses) will be distributed to Authorized

- 29 -

Claimants entitled to a distribution of at least $10.00. Stipulation, ¶5.10. Any amount remaining following the initial distribution will be further distributed among Authorized Claimants to the extent economically feasible. *Id.* If further re-distribution of funds remaining in the Net Settlement Fund would not be cost effective, the Plan of Allocation calls for any remaining balance to be contributed to an appropriate non-sectarian, non-profit charitable organization(s) serving the public interest selected by Lead Counsel. *Id.*

This plan is fair, reasonable, and adequate, and consistent with standard practice in securities cases. *See Inovio Pharms.*, 2023 WL 227355, at *9 (approving plan that allocates funds in proportion to each member's losses based on "when each member purchased and sold his . . . stock[]"); *see also, e.g.*, *SOS Ltd.*, 2023 WL 319895, at *7 (same); *Honeywell*, 2022 WL 1320827, at *6 (same); *Healthcare Servs. Grp.*, 2022 WL 118104, at *11 (same); *Innocoll II*, 2022 WL 16533571, at *8 (same). No objections to the Plan of Allocation have been filed by Class Members. For all these reasons, the Plan of Allocation should be approved.

## II. CONCLUSION

The Settlement before the Court for approval is a very good one, under any measure, and the proposed Plan of Allocation is an equitable method by which to distribute the Net Settlement Fund. For all the reasons stated above and in the accompanying declarations, Lead Plaintiff respectfully requests that the Court grant its

- 30 -

4877-0212-4729.v1

motion for final approval of the Settlement and the Plan of Allocation as fair, reasonable, and adequate.

DATED: May 9, 2024

Respectfully submitted,

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN

_s/ Peter S. Pearlman_
PETER S. PEARLMAN

Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)
psp@njlawfirm.com

SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  212/584-0700
212/584-0799 (fax)
cseeger@seegerweiss.com

Local Counsel for Plaintiff

- 31 -

4877-0212-4729.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
DANIEL J. PFEFFERBAUM
HADIYA K. DESHMUKH
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

Lead Counsel for Lead Plaintiff

VANOVERBEKE, MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Lead Plaintiff

- 32 -